**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dion FLOYD, Defendant–Appellant.**

**No. 89–50295.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 14, 1991 *.

Decided Sept. 25, 1991.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Alan T. Launspach, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Barbara A. Curry, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before NORRIS and THOMPSON, Circuit Judges, and KING, District Judge.**

** Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii,

WILLIAM A. NORRIS, Circuit Judge:

Defendant Dion Floyd appeals his conviction for conspiracy to distribute cocaine and rock cocaine. The government cross-appeals the district court's downward departure in sentencing defendant to seventeen years of imprisonment. We affirm both the conviction and the sentence.

## I

In early September 1988, the Drug Enforcement Administration received information from a confidential informant that Dion Floyd was engaged in the distribution of cocaine. Subsequently, the DEA began an investigation into Floyd's drug trafficking activities.

On September 12, 1988, the confidential informant placed several recorded telephone calls to Floyd. The informant told Floyd that he was interested in purchasing cocaine. In the course of the conversations, Floyd and the informant negotiated the price and quantity of the cocaine. They also agreed that one third of the cocaine would be rock cocaine. Floyd then told the informant to call Lavada Floyd to arrange for delivery.

The informant placed a series of recorded phone calls to Lavada Floyd. In these conversations, Lavada Floyd told the informant that Dion Floyd had called her. She also indicated that she was aware of the price negotiated between Floyd and the informant. She also knew that one third of the cocaine would be rock cocaine. The next day, the informant and Lavada Floyd arranged for a meeting place and carried out the purchase.

Floyd was charged in a three-count indictment for his role in a conspiracy to distribute and to possess with the intent to distribute cocaine and rock cocaine. After waiving his right to trial by jury, Floyd was convicted on all three counts at a bench trial.

Floyd's sole contention on appeal is that the evidence at trial was insufficient to

sitting by designation.

support his conviction. The standard of review for examining the sufficiency of evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

■ At the end of the trial, Floyd's attorney did not make the motion for acquittal. Under *United States v. Mora,* 876 F.2d 76 (9th Cir.1989), when counsel fails to object to the sufficiency of the evidence at the end of trial, this court can review this issue only for plain error. Though not insurmountable, the plain error standard is higher than the standard articulated in *Jackson.*

■ Floyd contends that it was plain error for the district court to conclude that the evidence supports a finding that he was a participant in a conspiracy to distribute cocaine. He proposes that, at best, the evidence supports a finding that he was a knowing spectator.

We disagree. The record includes the transcript of several recorded telephone conversations between Floyd and the government informant and between the informant and Lavada Floyd. By no stretch of the imagination can we characterize as plain error the district court's view that these conversations support a finding that Floyd was a member of a conspiracy to distribute cocaine.

Floyd bases his challenge to the sufficiency of the evidence primarily on the credibility of the confidential informant. He characterizes the district court's reliance on the informant's testimony as plain error. But Floyd disregards the fact that the government's case was complete without the testimony of the confidential informant. It was he, and not the government, who called the confidential informant to the stand to testify. Since we hold that the district court's finding of guilt would not constitute plain error even if the district court relied solely on the evidence presented by the government, we do not even reach the issue whether the confidential informant's testimony lacked any credibility whatsoever.

## II

In the pre-sentence report, the probation officer determined that Floyd's adjusted offense level was 38 and that his criminal history category was VI. In computing the criminal history category, the probation officer took into consideration a manslaughter which Floyd committed at the age of seventeen but for which he was sentenced as an adult. The probation officer set the applicable Guidelines range at 360 months to life imprisonment. The probation officer also stated that he had not identified any information that would warrant a departure from this range.

At sentencing, the district court adopted the recommended Guidelines range of thirty years to life imprisonment. Nevertheless, the court exercised its discretion to depart downward from the Guidelines range and imposed a sentence of seventeen years imprisonment. The court reasoned as follows:

> The court certainly was troubled with respect to the incident in 1979 when Mr. Floyd was 17 years of age. However, there is a basis for departure, and the court is talking in terms of lack of guidance and education, abandonment by the parents, and imprisonment of Mr. Floyd at age 17, and also with respect to the basic philosophy of the guidelines that the sentencing should be sufficient but not greater than necessary.

Government's Excerpt of Record ("GER") at 3.

■ In evaluating a district court's decision to depart from the presumptively applicable Guidelines range, we apply a three-part test articulated recently in *United States v. Lira–Barraza,* 941 F.2d 745, 746–47 (9th Cir.1991) (en banc). First, we determine *de novo* whether the district court identified a mitigating circumstance of a kind or to a degree that the Sentencing Commission did not adequately take into account when formulating the Guidelines.

If the court has done so, it is legally authorized to depart so long as the circumstance is consistent with the sentencing factors prescribed by Congress in 18 U.S.C. § 3553(b) and with the Guidelines. Second, we review for clear error factual findings supporting the existence of the identified circumstance in this case. Third, we determine whether the extent of departure was "unreasonable," i.e. an abuse of discretion. *Id.* at 746–47.

■ The mitigating circumstance in this case may fairly be characterized as "youthful lack of guidance." Lack of guidance and education, abandonment by parents and imprisonment at age 17 constitute the elements of this mitigating circumstance. If the Guidelines fail to adequately take into consideration the effect that a person's youthful lack of guidance had on that person's criminality, the district court may depart downward from the applicable Guidelines range so long as such departure is not otherwise prohibited. In this case, the district court departed downward because it believed that Floyd's youthful lack of guidance had a significant effect both on his past criminality and on his commission of the present offense. Thus, the district court thought (i) that Floyd's criminal history category significantly overrepresents the actual seriousness of his past criminality;[1] and (ii) Floyd's base offense level over-represents the actual seriousness of his criminality in the commission of the present offense.

■ As an initial matter, we disagree with the government that the district court was required to specify the weight that it accorded to each element of the mitigating circumstance and determine whether each element would independently qualify as a mitigating circumstance.[2] As we stated in *United States v. Cook*, 938 F.2d 149 (9th Cir.1991), "[t]here is no reason to be so literal-minded as to hold that a combination of factors cannot together constitute a 'mitigating circumstance.'" *Id.* at 153. We noted further, "Given the Sentencing Commission's acknowledgment of the 'vast range of human conduct' not encompassed by the Guidelines, a unique combination of factors may constitute the 'circumstance' that mitigates." *Id.* As long as the district court identifies a single mitigating circumstance, we examine the permissibility of that circumstance.

We now need to determine whether the court's reliance on this mitigating circumstance was proper. On this issue, *United States v. Lawrence*, 916 F.2d 553 (9th Cir. 1990), provides meaningful guidance. In *Lawrence*, we held that a sentencing judge can depart downward from the applicable Guidelines range if the defendant's criminal history category significantly overrepresents the seriousness of his criminal history. *Id.* at 554–55. If the district court here had merely found that Floyd's criminal history category overrepresents the seriousness of his criminal history, we would have upheld the departure on the basis of *Lawrence*.

This case, however, differs from *Lawrence* in two important ways. First, in deciding to depart downward, the district court evoked youthful lack of guidance as the circumstance which mitigates the seriousness of Floyd's criminality in the commission of past offenses, rather than merely stating that the criminal history category overrepresents Floyd's criminality. Sec-

1. Indeed, just before exercising its discretion to depart, the district court stated, "The court certainly was troubled with respect to the incident in 1979 when Mr. Floyd was 17 years of age. However, there is a basis for departure." GER at 8.

2. The government argues that several distinct mitigating circumstances are present here. To support its argument, the government puts the spotlight on phrases such as "lack of education" and "imprisonment at age 17." In so doing, the government pulls those phrases out of context. Unlike the government, we read the district court's statement in its entirety and interpret the words within their proper contexts. In explicitly stating that there is *a* basis for departure, the court identified *one* mitigating factor. The court then recited the facts supporting that mitigating factor: lack of guidance and education, abandonment by parents, and imprisonment at age 17. These facts also constitute the elements of the mitigating factor on which the court relied. Therefore, we need not conduct the particularized analysis urged by the government.

ond, the district court relied on youthful lack of guidance to mitigate the seriousness of Floyd's criminality in the commission of the present offense, in addition to mitigating the seriousness of his criminality in the commission of past offenses. Because of these additional twists, we are compelled to go beyond *Lawrence*.

■ Based on our analysis of the Sentencing Reform Act and the Guidelines, we hold that the district court's use of youthful lack of guidance as a mitigating circumstance is not precluded by any provision of the Act or the Guidelines. On the contrary, the mitigating circumstance is consistent with "the sentencing factors prescribed by Congress." *Lira–Barraza*, at 749 (referring to 18 U.S.C. § 3553). 18 U.S.C. § 3553(a), for instance, provides in relevant part that "[t]he court, in determining the particular sentence to be imposed, shall consider ... the history and the characteristics of the defendant." 18 U.S.C. § 3661 further provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court ... may receive and consider for the purpose of imposing an appropriate sentence." Youthful lack of guidance clearly constitutes "information concerning the background, character, and conduct of a person" within the meaning of 18 U.S.C. § 3661.

28 U.S.C. § 994(e) arguably limits the scope of 18 U.S.C. § 3661. In that section, Congress directed the Commission:

[To] assure that the guidelines and policy statements, in recommending a term of imprisonment or length of term of imprisonment, reflect the *general inappro-*

*priateness* of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant.

*Id.* (emphasis added). Although at least one court has found a conflict between 18 U.S.C. § 3661 and 28 U.S.C. § 994(e) and invalidated the latter, *see United States v. Boshell*, 728 F.Supp. 632, 635–36 (E.D.Wash.1990) (appeal pending), we need not decide whether the two sections are in conflict because the mitigating circumstance of youthful lack of guidance is not in conflict with any provision of the Guidelines promulgated pursuant 28 U.S.C. § 994(e).

■ Chapter Five, Part H of the Guidelines deals with bases for departure declared *generally* inappropriate by 28 U.S.C. § 994(e).[3] The government draws our attention to several sections in Part H which assertedly conflict with some elements of the mitigating circumstance on which the district court relied. For instance, the government points out that section 5H1.6 states, "Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines." Relying on this section, the government argues that departing on the basis of youthful abandonment by parents is impermissible. The government's reasoning is flawed. The Guidelines recommend against relying on the present existence of family obligations as a basis for departure because they reflect the Congressional concern that convicted criminals with family ties not receive lighter sentences than convicted criminals without such ties. As the Senate Report

---

**3.** As we noted in *United States v. Mondello*, 927 F.2d 1463 (9th Cir.1991), however, "in extraordinary circumstances, a court may rely on one of the six factors listed in section 5H1.1–.6 to depart from the guideline range." *Id.* at 1470. *See also United States v. Alba*, 933 F.2d 1117, 1122 (2nd Cir.1991) (upholding a departure based on existence of family ties and obligations and noting that "a sentencing court is not precluded as a matter of law from considering [family ties and obligations] in making a downward departure"); *United States v. Pena*, 930 F.2d 1486, 1495 (10th Cir.1991) (holding that extraordinary circumstances may make family

ties and responsibilities relevant to the sentencing decision and upholding a departure based on such ties); *United States v. Big Crow*, 898 F.2d 1326, 1331–32 (8th Cir.1990) (same); *United States v. Brady*, 895 F.2d 538, 543 (9th Cir. 1990) ("[T]he Guidelines allow the sentencing court to consider a defendant's ... family ties and responsibilities, and community ties.") (dictum). Because youthful lack of guidance does not come within the purview of any of the provision of 28 U.S.C. § 994(e) or of U.S.S.G. Chapter Five, Part H, however, we need not determine whether this case presents such extraordinary circumstances.

accompanying 28 U.S.C. § 994 states, "The purpose of the subsection is, of course, to guard against the inappropriate use of incarceration for those defendants who lack education, employment, and stabilizing ties." S.Rep.N. 225, 98th Cong., 2d Sess. 175 (1984) *reprinted in* 1984 *U.S. Code Cong. & Admin.News* 3182, 3358 [hereinafter *"Senate Report"*]. To construe a provision clearly intended to prohibit heavier sentences for people lacking family ties as prohibiting lighter sentences for such people is imputing to Congress an intent it has not manifested.

In any case, the district court did not depart downward because Floyd *presently* lacks family ties, but departed, in part, because he was abandoned by his parents as a youth. The provision recommending against departure based on the present *existence* of family *obligations* does not even speak to a departure based on the *absence* of family *guidance* at an earlier age. The circumstance specified in the Guidelines (current presence of family ties) refers to the present usefulness of a convicted defendant to his family and friends.[4] In sharp contrast, the mitigating circumstance of youthful lack of guidance refers to a past condition that may have led a convicted defendant to criminality. That both mitigating circumstances involve the presence or absence of familial relationships should not obscure this basic difference between them—a difference which is sufficient to place youthful lack of guidance outside the purview of U.S.S.G. § 5H1.6 and to make it a mitigating factor that is not prohibited under Chapter Five, Part H of the Guidelines.

■ Similarly, the government points out that section 5H1.2 states, "Education

and vocational skills are not ordinarily relevant in determining whether a sentence should be outside the guidelines." Relying on this section, the government argues that departing on the basis of lack of education is impermissible. The government's reasoning is flawed because it misconstrues the district court's departure as based on lack of education. We note that the district court merely referred to lack of education in support of its finding that Floyd lacked guidance as a youth. A provision *recommending* against departure based on educational level does not speak to a departure based on youthful lack of guidance. In any case, however, in passing 28 U.S.C. § 994(e), Congress was preoccupied with ensuring that people who lack educational skills do not receive heavier sentences than people who do have such skills. *See Senate Report, supra,* at 175 ("The purpose of the subsection is, of course, to guard against the inappropriate use of incarceration for those defendants who lack education, employment, and stabilizing ties."). To use this provision to prohibit a downward departure based on youthful lack of guidance would be, once again, to impute to Congress an intent it never manifested.

Because neither 28 U.S.C. § 994(e) nor any provision of the Guidelines *prohibits* a departure based on youthful lack of guidance, we have to fall back on "Congress' background rule that *offender characteristics may be considered unless otherwise determined.*" *United States v. Mondello,* 927 F.2d 1463, 1470 (9th Cir.1991) (emphasis added). This general background rule has been most clearly summarized by section 1B1.4 of the Guidelines:

> In determining ... whether a departure from the Guidelines is warranted,

---

4. Departure cases involving Guidelines section 5H1.6 deal with district court decisions to depart downward on the basis that defendants have exceptional ongoing family obligations that they would be unable to fulfill if sentenced to long prison sentences. *See, e.g., Alba,* 933 F.2d at 1122 (upholding a downward departure based on section 5H1.6 where a district court found that a defendant lived with and supported a wife, two daughters, aged four and 11, a disabled father and a paternal grandmother and reasoning that defendant's incarceration within

the Guidelines range "might well result in the destruction of an otherwise strong family unit"); *Pena,* 930 F.2d at 1495 (upholding a departure where the district court found that defendant is the sole supporter of her two-month old child and provides financial support to her 16–year old daughter who is also a single-parent of a two-month old child and reasoning that "should the defendant be incarcerated for an extended period of time, two infants would be placed at a potential risk").

the court may consider, *without limitation,* any information concerning the background, character, and conduct of the defendant, unless otherwise prohibited by law.

U.S.S.G. § 1B1.4 (emphasis added). Because the Guidelines do not prohibit a downward departure based on youthful lack of guidance, we follow the clear commands of 18 U.S.C. § 3661 and U.S.S.G. § 1B1.4. We thus decline the invitation to place additional limitations on mitigating circumstances based on personal character- istics of the defendant and hold that a district court may consider youthful lack of guidance in determining the appropriate sentence.

Our holding is consistent with the sentencing principle we announced in *United States v. Barker,* 771 F.2d 1362 (9th Cir. 1985). In *Barker,* a pre-Guidelines case, we noted that "a criminal sentence must reflect an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *Id.* at 1363. In *United States v. Brady,* 895 F.2d 538 (9th Cir.1990), we noted that the *Barker* principle maintains its vitality in the context of Guidelines sentencing. *See id.* at 541 ("The Guidelines ... do not contravene the principle enunciated in *Barker.*") (citations omitted). A sentencing scheme which generally prohibits a departure based on the presence of family ties, but allows departures based on youthful lack of guidance is consistent with the *Barker/Brady* principle. After all, a convicted defendant is not less culpable merely because he has present family ties; he might, however, be considered less culpable if he grew up without any meaningful guidance from his parents and his society. As such, youthful lack of guidance is more relevant than present family ties to the "sentencing court's duty to assess the culpability of a particular defendant." *Brady,* 895 F.2d at 543 (relying on *Barker* in the context of Guidelines sentencing).

Having concluded that the district court identified a permissible basis for departure, we now determine whether, under *Lira– Barraza,* the district court was correct in

finding that the mitigating circumstance existed in this case. This is a finding of fact which is not clearly erroneous.

Finally, we need to inquire whether the extent of departure in this case was "unreasonable." In this case, the presumptively applicable range was 360 months to life imprisonment. The district court sentenced Floyd to seventeen years (194 months). In determining the reasonableness of the amount of departure, we have found a useful structural analogy in the criminal history category, especially because the district court thought that the category overrepresented the seriousness of defendant's criminal history. *See* U.S.S.G. § 4A1.3 (Policy Statement) ("In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable."). The presumptively applicable range in the absence of any criminal history would have been 235–293 months. If the departure had stemmed merely from the fact that Floyd's criminal history category overrepresented his criminality, we would have vacated the sentence of 194 months as unreasonable. *Lawrence* does not permit a departure below the applicable Guidelines range for Category I for criminal history category overrepresentation. *See* 916 F.2d at 554; *see also United States v. Borrayo,* 898 F.2d 91, 94 (9th Cir.1989) ("A departure below the guideline range of Category I on the basis of the absence of criminal history is not appropriate."). However, in this case, the district court was also concerned with the effect that youthful lack of guidance had on Floyd's commission of the present offense. The magnitude of the downward departure, therefore, is not "unreasonable" under *Lira–Barraza.*

In sum, we hold that the district court did not err in departing downward from the applicable Guidelines range based on youthful lack of guidance. Having reviewed the evidence, we also hold that the district court did not commit clear error in finding that the identified circumstance ex-

isted in this case. Finally, we hold that the amount of downward departure was not "unreasonable."

### III

In light of the foregoing, we affirm both Floyd's conviction for conspiracy to distribute cocaine and his sentence of seventeen years imprisonment.

AFFIRMED.