**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Terry Lee ANDERS, Defendant–
Appellee.**

**No. 90–10558.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1991.

Decided Feb. 12, 1992.

Rory K. Little, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellant.

Larry B. Kupers, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellee.

Before ALDISERT,* GOODWIN and NOONAN, Circuit Judges.

ALDISERT, Senior Circuit Judge:

This appeal by the government from a sentence of probation given Terry Lee Anders, who had confessed to seven bank robberies, requires us to decide whether the district court erred in departing downward from the 57– to 71–month incarceration range under the Sentencing Guidelines by sentencing Anders to straight probation based on his post-arrest drug rehabilitation efforts and his difficult personal and family background. We vacate the sentence and remand for resentencing.

Jurisdiction was proper in the district court based on 18 U.S.C. § 3231. We have appellate jurisdiction under 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291 to review a district court's downward departure from the Sentencing Guidelines. *See United States v. Sanchez,* 933 F.2d 742 (9th Cir. 1991). The appeal was timely filed under Rule 4(b), F.R.A.P.

The government argues that the district court erred in determining that "extraordinary circumstances" justified the downward departure; that the court impermissibly considered post-arrest drug rehabilitation in contravention of our subsequent decision in *United States v. Martin,* 938 F.2d 162 (9th Cir.1991); and that the court erred in concluding that several factors, including age, mental and emotional conditions, extreme drug addiction, employment record, family ties and responsibilities, taken together, represented a permissible basis for downward departure. The government also contends that even if any downward departure was proper, the extent of the departure in this case was unreasonable.

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

■ We employ a three-step analysis in reviewing departures from the Sentencing Guidelines: "1. We determine whether the district court had legal authority to depart; 2. We review for clear error factual findings supporting the existence of the identified circumstance; 3. We determine whether the extent of departure from the applicable guideline range was 'unreasonable'...." *United States v. Boshell,* 952 F.2d 1101, 1107 (9th Cir.1991) (citing *United States v. Lira–Barraza,* 941 F.2d 745, 746–51 (9th Cir.1991) (en banc)).

## I.

On December 19, 1989, the appellee, Terry Lee Anders, was arrested and charged with robbing the Homestead Savings and Loan in San Francisco earlier that day. He subsequently admitted to robbing at least seven different banks during the previous year. He stated that he never used violence or the threat of violence during these robberies and that they were motivated by his need for money to obtain illegal drugs.

On December 29, 1989, a federal grand jury indicted Anders on seven counts of bank robbery. In lieu of pretrial incarceration, the court ordered Anders to reside at Walden House, a substance abuse treatment center in San Francisco, and to participate in its drug rehabilitation program.

After entering into a plea agreement, Anders pled guilty on May 7, 1990, to five of the seven counts in the indictment. The court accepted the pleas, and the government dismissed the remaining two counts. The district court informed Anders that he was "sort of at the mercy [of] the Sentencing Guidelines." E.R. at 25.

## A.

On June 15, 1990, the probation officer released her presentence report, which stated that Anders had simulated having a gun during the five bank robberies of which he was convicted, but that each robbery was counted as unarmed. Although Anders had stolen over $12,000 total in the five robberies, he had taken less than $10,000 during each robbery. The report concluded that the adjusted offense level for the five unarmed bank robberies was 26, and that after the two-level deduction for acceptance of responsibility, the total offense level was 24.

The report further revealed that Anders had a substantial criminal history. Between the ages of 18 and 25, Anders was convicted of four felonies—grand larceny, forgery, possession of narcotics and armed robbery—and spent a substantial amount of time in state prisons. Because these convictions occurred more than 15 years before the instant offenses, they were not used in calculating Anders' criminal history points under the Sentencing Guidelines. However, the report did count two later state convictions for driving under the influence and unemployment benefits fraud, resulting in a criminal history category of II.

Based on an offense level of 24 and a criminal history category of II, the probation report established a 57- to 71-month range of incarceration under the guidelines. The report noted that the "Guidelines do not authorize a sentence of probation" in this case. The parties do not dispute this calculation of the sentencing range.

The probation report also outlined Anders' personal and family history. Anders, who was 46 at the time of sentencing, had a "traumatic" childhood, consisting of foster homes, a physically abusive foster father and juvenile reformatories. He did not meet his mother until he was 27 years old, and the identity of his father is unknown.

The report further noted that Anders has had a narcotics abuse problem for many years. Until his arrest, he was a daily user of cocaine, frequently spending "thousands of dollars a week" for drugs. Notwithstanding his "successful" completion of three drug treatment programs since 1983, he reverted to drug abuse after each program. Anders explained this by stating that he had been "in denial."

## B.

Anders worked as a unionized ironworker from 1974 to 1986 or 1987, when he

stopped working due to drug abuse. Anders claimed that he subsequently supported himself through disability and unemployment insurance benefits. He also admitted to robbing banks to support his drug habit in 1988 and 1989.

In 1985, Anders' ten-year marriage to Laura Blake broke up because of his substance abuse. Although Anders is required to pay his ex-wife $450 per month for child support, he has been unable to pay this for some time. The report indicated, however, that Anders maintains a good relationship with Ms. Blake and his daughter, and that they are among his support group.

Regarding Anders' substance abuse, the report stated that Anders is making progress at the Walden House drug rehabilitation program, and that Anders' therapist has described him as "highly motivated" and "doing very well."

In light of the 57– to 71–month sentencing range, the government recommended a 71–month sentence. Anders countered with a request for straight probation, a downward departure of at least 57 months, based on his difficult personal and family background and his drug rehabilitation.

### C.

On July 23, 1990, the district court held a sentencing hearing at which it acknowledged that Anders' request for straight probation would require the court "to almost deep six the Guideline[s]." E.R. at 104. Nevertheless, the court asked the parties to research the court's power to impose non-imprisonment sentencing options under the guidelines.

On September 10, 1990, after receiving the parties' supplemental sentencing memoranda, the court suspended the imposition of sentence on each count and placed Anders on probation for a total of five years. The terms of probation require Anders to remain at Walden House until his probation officer determines that release is appropriate, and to stay drug free at all times. The court also ordered Anders to make restitution to the banks.

The district court justified this substantial downward departure by stating that the purpose of the guidelines would not be served by a period of incarceration. The court cited two primary reasons for the departure: Anders' "extraordinary unique personal and family history," and his commitment "to a very substantial ... serious, demanding drug treatment program." *Id.* at 175. The court stated it was loath to remove Anders from Walden House and his support system and to place him in prison. The court believed that he had been humiliated enough. *Id.*

The district court followed up its oral sentence with a written judgment on October 3, 1990. The judgment reiterated that there were "extraordinary circumstances" present in Anders' case, and that there was "a unique combination of ... factors present" as well. Judg. at 3; E.R. at 186. The court listed as "extraordinary factors" his (1) age, (2) mental and emotional conditions, (3) drug dependence, (4) employment record and (5) family ties and responsibilities. *Id.* at 3–8; E.R. at 186–91. The court also cited Anders' "successful efforts at drug rehabilitation" following his arrest. *Id.* at 8–9; E.R. at 191–92.

The government subsequently filed this appeal from Anders' sentence.

### II.

▪ A court must sentence within the applicable guideline range unless valid grounds exist for departure. 18 U.S.C. § 3553(b). Section 3553(b) provides:

The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

Thus, if a circumstance is not one adequately considered by the guidelines, "the court is legally authorized to depart so long as the circumstance is consistent with the sentencing factors prescribed by Congress in 18 U.S.C. § 3553(a), with the Guidelines, and, of course, with the Constitution." *Lira–Barraza,* 941 F.2d at 746. The defendant bears the burden of proving the appropriateness of a downward departure. *United States v. Howard,* 894 F.2d 1085, 1089–90 (9th Cir.1990).

■ Since the imposition of Anders' sentence, we have ruled that "a defendant's post-arrest drug rehabilitation efforts afford no basis for downward departure from the guideline sentencing range." *Martin,* 938 F.2d at 164. We observed that the U.S. Sentencing Commission had specifically addressed drug rehabilitation in section 5H1.4, which provides:

> Substance abuse is highly correlated to an increased propensity to commit crime. Due to this increased risk, it is highly recommended that a defendant who is incarcerated also be sentenced to supervised release with a requirement that the defendant participate in an appropriate substance abuse program. If participation in a substance abuse program is required, the length of supervised release should take into account the length of time necessary for the supervisory body to judge the success of the program.

U.S.S.C. § 5H1.4 (policy statement). From this statement we concluded that "it is clearly the Commission's intent that rehabilitation from drug abuse be factored into post-sentencing supervised release and not be recognized as a ground for departure." *Martin,* 938 F.2d at 164; *accord United States v. Sklar,* 920 F.2d 107 (1st Cir.1990); *United States v. Pharr,* 916 F.2d 129 (3d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991); *United States v. Van Dyke,* 895 F.2d 984 (4th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 112, 112 L.Ed.2d 82 (1990).

The district court did not have the advantage of the *Martin* decision at the time of sentencing. Anders now concedes that under the teachings of *Martin* "drug rehabilitation is not a ground for downward departure." Brief for Appellee at 6 n. 3. Because the district court relied on an improper factor in departing downward from the Sentencing Guidelines, we must vacate and remand for resentencing. *United States v. Montenegro–Rojo,* 908 F.2d 425, 428 (9th Cir.1990) (holding that when a sentencing court considered both proper and improper bases for departure, the sentence must be vacated and the case remanded for resentencing).

### III.

■ Because the district court based its downward departure on several other factors that raise serious questions, we will address these factors to furnish direction to the district court on resentencing. Moreover, since Anders' sentencing, we have clarified our "complex of factors" approach in sentencing guideline cases. In *United States v. Cook,* 938 F.2d 149, 153 (9th Cir.1991), we observed that "a unique combination of factors may constitute [a mitigating] 'circumstance'" justifying a downward departure. Such a departure may be appropriate when "'a court finds an atypical case,' one 'where conduct significantly differs from the norm.'" *Id.* (quoting U.S.S.G. Ch. 1, Pt. A, § 4(b)). Speaking for the court, Judge Noonan cautioned:

> In making a decision in any particular [sentencing guideline] case, good judgment will often require the evaluation of a complex of factors. No single factor may be enough to point to the wise course of decision. But a wise person will not look on each particular factor abstractly and alone. Rather, it will be how the particular pieces fit together, converge, and influence each other that will lead to the correct decision.

*Id.*

It is against this backdrop that we consider the district court's finding that "extraordinary circumstances" justified a downward departure from Anders' sentencing guideline range.

## A.

In addition to Anders' post-arrest drug rehabilitation, the district court based the downward departure on a combination of five factors, which are listed in U.S.S.G. §§ 5H1.1–.6: (1) age, (2) mental and emotional conditions, (3) drug dependence, (4) employment record and (5) family ties and responsibilities. Although these factors typically are considered "in making adjustments within the set range mandated by the guidelines" and are "not ordinarily" reasons for departure, we have held that they may support departure in "extraordinary circumstances." *United States v. Mondello*, 927 F.2d 1463, 1468–70 (9th Cir. 1991); *accord Boshell*, 952 F.2d at 1106–07. The district court determined that these factors did present "extraordinary circumstances" in this case.

## B.

■ First, the district court found that Anders' age of 46 was extraordinary because it presented "a critical time in his life, for if he is sentenced to a term of imprisonment within the Guidelines he will be over fifty before he is released." Judg. at 3; E.R. at 186. The court found: "The ability of drug programs to deal effectively with defendant's drug problems after his release in his early fifties is likely to be more difficult and his age will present greater problems in placement." *Id.* at 4; E.R. at 187.

The government persuasively argues that even if the age of 46 can be viewed as "critical," it is in no sense extraordinary. The legal definition of "extraordinary" is "[o]ut of the ordinary, exceeding the usual, average, or normal measure or degree; beyond or out of the common order or rule; not usual, regular, or of a customary kind; remarkable; uncommon; rare." *Black's Law Dictionary* 527 (5th ed. 1979). Section 5H1.1 plainly states that "[a]ge may be a reason to go below the guidelines when the offender is elderly *and* infirm and where a form of punishment ... might be equally efficient as and less costly than incarceration." The age of 46 certainly does not qualify as "elderly and infirm,"

and the district court has not set forth any persuasive facts demonstrating why the age of 46 should be deemed extraordinary in this case.

## C.

■ Second, the district court conceded that although section 5K2.13 allows for a reduction in sentence based on a defendant's reduced mental capacity, it expressly excludes a reduction for reduced mental capacity due to "voluntary" drug usage. *See United States v. Sanchez*, 933 F.2d 742, 747 (9th Cir.1991) ("§ 5K2.13 permits a court to depart downward if the defendant suffered from diminished capacity that resulted from involuntary drug use, so long as the offense was nonviolent."). The court found that the "extraordinary circumstances" of Anders' crack cocaine abuse suggest that his usage was not voluntary. Judg. at 4; E.R. at 187. A departure based on this reason, however, is on a collision course with the guidelines' policy statement that "[d]rug dependence or alcohol abuse is not a reason for imposing a sentence below the guidelines." U.S.S.G. § 5H1.4. Moreover, even if Anders' addiction could be characterized as "involuntary" drug usage, the facts do not demonstrate that his usage was extraordinary in any way. The government has produced a list of 11 unarmed bank robbery cases from the Northern District of California in which most of the defendants abused drugs, alcohol, or both. *See* Brief for Appellant app. at 1–2. Faced with this specific record from the same district court, we are unable to agree that bank robbery cases in which the defendants abuse drugs or alcohol may, generally speaking, be considered "extraordinary circumstances."

## D.

■ Third, the district court listed Anders' drug dependence as one of its bases for departure, notwithstanding its candid acknowledgement that "the Guidelines at Part H, Chapter 5, discourage the use of drug dependency as a basis for any departure in sentencing." Judg. at 4; E.R. at 187. However, the guidelines do more than discourage departure for voluntary drug abuse; they forbid it. U.S.S.G.

§ 5H1.4; *see United States v. Richison*, 901 F.2d 778, 781 (9th Cir.1990) (recognizing that downward departures based on voluntary drug dependence are foreclosed under the guidelines). Thus, the district court's reliance on this factor as a basis for downward departure also was improper.

### E.

■ Fourth, the district court found that Anders' ability to maintain full-time employment until his crack cocaine abuse took over his life made him a better candidate for drug rehabilitation than for imprisonment. Judg. at 6; E.R. at 189. The court determined that Anders' "employment record shows that he has been and, without the use of drugs, can be a productive, law-abiding citizen." *Id.*

We believe, however, that there is nothing in Anders' employment record that is extraordinary or unusual. He simply held a job, like many individuals, until his drug abuse made it impossible for him to continue working. An informed judiciary is aware that persons addicted to drugs or alcohol often work for years before having to quit because of their addiction. We find it difficult to consider this circumstance in the complex of permissible factors that we may employ for downward departure.

### F.

■ Finally, the district court found that Anders' lack of family ties warranted a downward departure. The court cited both his early childhood, in which he moved through a variety of foster homes and was abused by one of his foster fathers, and his teen years, in which he was placed in two reform schools for incorrigibility. *Id.* at 6–7; E.R. at 189–90.

Once again, we agree with the government that Anders' concededly unpleasant childhood and family life do not distinguish him from many offenders in the criminal system, which is why "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines." U.S.S.G. § 5H1.6.

On remand, however, the district court may wish to consider *United States v.* *Floyd*, 945 F.2d 1096 (9th Cir.1991), another decision handed down after Anders' sentencing. In *Floyd*, the district court departed downward from the sentencing guideline range based on the defendant's "youthful lack of guidance." Specifically, the court cited the defendant's lack of guidance and education, abandonment by his parents and his imprisonment at age 17. *Id.* at 1098.

We determined in *Floyd* that "the district court's use of youthful lack of guidance as a mitigating circumstance is not precluded by any provision of the [Sentencing Reform] Act or the Guidelines." *Id.* at 1100. We observed that the policy against departure based on present family ties and responsibilities (U.S.S.G. § 5H1.6) "does not even speak to a departure based on the *absence* of family *guidance* at an earlier age." *Id.* at 1101. We concluded, therefore, that youthful lack of guidance is outside the purview of section 5H1.6, making it a mitigating factor that is not limited by Chapter 5, Part H, of the guidelines. *Id.*

Having determined that youthful lack of guidance was a permissible basis for departure, we then reviewed the district court's finding for clear error. *Id.* at 1102. We concluded that the finding of youthful lack of guidance was not clearly erroneous, and that the downward departure to 194 months from a sentencing range of 360 months to life imprisonment was not "unreasonable." *Id.* at 1102–03. It bears noting, however, that the defendant in *Floyd* was a 26–year–old man who had committed manslaughter at age 17, and who had suffered from a lack of education and abandonment by his parents. *Id.* at 1098. We indicated that some connection must exist between the youthful lack of guidance and the offense for which the defendant presently is being sentenced. *Id.* at 1099 (noting that the district court found "that Floyd's youthful lack of guidance had a significant effect both on his past criminality and on his commission of the present offense"). On remand, the district court will have to consider whether the teachings of *Floyd* regarding youthful lack of guidance may be applied to a crime committed by a 46–year–old man.

### G.

For the reasons stated above, we conclude that the factual findings supporting the district court's determination that Anders' personal and family background constituted "extraordinary circumstances" were clearly erroneous. *See Boshell,* 952 F.2d at 1106–07. We further conclude that these factors do not converge to create a mitigating circumstance justifying a downward departure under the "complex of factors" approach announced in *Cook.* We do not believe that Anders' "total pattern of behavior" suggests " 'an atypical case,' ... 'where conduct significantly differs from the norm.' " *Cook,* 938 F.2d at 153 (quoting U.S.S.G. Ch. 1, Pt. A, § 4(b)).

The record reveals that Anders committed at least seven bank robberies to finance his crack cocaine habit. Unfortunately, in today's society neither the crime nor the motivation is extraordinary or unique. Although Anders' drug rehabilitation efforts are commendable, federal courts are constrained by limitations imposed by the guidelines. Both the sentencing court and the court reviewing the sentence must evaluate a "complex of factors" and realize that "[n]o single factor may be enough to point to the wise course of decision." *Id.* But the factors that go into this complex must be those at least authorized, and certainly not expressly prohibited, by the Sentencing Guidelines. Moreover, the factual predicate of findings relating to permissible factors must possess the necessary quantum of evidence to survive the clearly erroneous standard of review.

### IV.

Accordingly, the sentence is VACATED and the proceedings REMANDED for resentencing.