12 F.3d 1110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joann OMECTIN, Defendant-Appellant.
 No. 92-50748.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 1, 1993.*
Decided Nov. 18, 1993.
 
 Before: FLETCHER, PREGERSON, and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Appellant JoAnn Omectin pled guilty to one count of unarmed bank robbery in violation of 18 U.S.C. Sec. 2113(a). Omectin moved for a downward departure from the applicable sentencing guideline range. The district court denied her motion and, under the career offender provisions of Sentencing Guidelines Sec. 4B1.1, sentenced Omectin to 151 months' incarceration. Omectin timely appeals the refusal of the district court to depart downward on the grounds of "youthful lack of guidance" and "extraordinary acceptance of responsibility". We affirm Omectin's sentence.
 
 FACTS
 
 3
 On June 23, 1992 JoAnn Omectin and co-defendant Maryann Padilla Sanchez entered Coast Federal Bank. While Sanchez stood behind Omectin in the teller line, Omectin gave teller Maria Gonzalez a demand note that stated, "This is a bank robbery ... put all bills on counter ... do not yell keep quiet, I have a partner watching you!" In response, the teller gave Omectin $481.00 from her teller drawer. Omectin then told the teller to "stay quiet," handed the cash to Sanchez, and both left the bank.
 
 
 4
 The following day Omectin and Sanchez surrendered themselves to the Los Angeles Police Department and confessed to robbing the bank. During her confession, Omectin told the interviewing officers that she had been "shooting up" before committing the robbery. She stated that she turned herself in upon sobering up because she realized that robbing the bank had been a mistake. On September 8, 1992, under separate written plea agreements, Omectin and Sanchez pled guilty to unarmed bank robbery.
 
 
 5
 In the Presentence Report submitted October 20, 1993, the U.S. Probation Officer classified Omectin as a career offender under Sec. 4B1.1 of the Sentencing Guidelines based on Omectin's two prior robbery convictions. Including a two-level reduction for acceptance of responsibility, Omectin's offense level of 30 resulted in a sentencing range of 168 to 210 months.
 
 
 6
 Three days later Omectin filed objections to the Presentence Report and moved the district court to depart downward from the proposed range based on "youthful lack of guidance" and "extraordinary acceptance of responsibility." In support of her first ground, Omectin contended that beyond age eleven, she experienced constant abuse and neglect by her mother and stepfather. This eventually led her to a life of crime, including alcohol and heroin abuse. Regarding her second ground, Omectin claimed that because she alerted authorities to the crime she had committed soon after the robbery and fully confessed, the court should have departed downward beyond the adjustment provided for in the guidelines.
 
 
 7
 In opposing Omectin's motion, the government argued that, according to Omectin's own statements, she lived in a loving environment with her grandmother until age eleven. Following her grandmother's death, she was not abandoned, but lived with her mother and step-father until age sixteen. (According to interviews with Omectin contained in a psychiatric presentencing evaluation, it was during this latter period that she was virtually "disowned by her family," "became more like a household servant than a family member," and was treated substantially differently than her step-siblings.)
 
 
 8
 The district court found that, although Omectin's childhood may have contributed to her drug abuse and subsequent criminality, her childhood circumstances were not severe enough to warrant a downward departure on this ground. Further, Omectin's refusal to take advantage of prior rehabilitative efforts (in conjunction with her prior convictions) forced the court to question Omectin's sincerity in this instance.
 
 
 9
 Regarding Omectin's second ground, the district court reduced her sentence on additional level as provided in a recent amendment to the guidelines for acceptance of responsibility. This adjustment brought Omectin's total offense level to 29, with a sentencing range of 151 to 188 months. Omectin was subsequently sentenced to 151 months' incarceration followed by three years' supervised release.
 
 I. YOUTHFUL LACK OF GUIDANCE
 
 10
 We first consider whether we have jurisdiction to review the district court's failure to depart downward. We do not have jurisdiction to review a district court's discretionary refusal to depart downward from a prescribed guideline range unless (1) the district court incorrectly determined there was no legal basis to depart, and (2) the district court indicated that it would otherwise have departed. United States v. Brown, 985 F.2d 478, 480 (9th Cir.1993); United States v. Belden, 957 F.2d 671, 676 (9th Cir.1992). Further, a court's silence regarding whether it had authority to depart is insufficient to show that it believed it lacked discretion to depart. Brown, 985 F.2d at 480 (citing United States v. Garcia-Garcia, 927 F.2d 489, 491 (9th Cir.1991)).
 
 
 11
 Omectin contends that the district court erred in concluding that it could not depart downward from the Sentencing Guidelines because of Omectin's alleged youthful lack of guidance. As indicated below, the record does not support this contention because the district court considered and rejected the appropriateness of a departure based on both applicable case law and the guidelines.
 
 
 12
 18 U.S.C. Sec. 3553(b) requires a court to sentence a defendant within the appropriate guideline range unless "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Omectin analogizes her case to United States v. Floyd, 945 F.2d 1096 (9th Cir.1991), where such circumstances first gave rise to a downward departure based on youthful lack of guidance. In Floyd, this Court affirmed a downward departure, finding that "youthful lack of guidance" was a mitigating circumstance not adequately considered by the Sentencing Commission in formulating the guidelines. Id. at 1099. The court identified "[l]ack of guidance and education, abandonment by parents and imprisonment of [Floyd] at age 17" as constituting the elements of youthful lack of guidance. Id.
 
 
 13
 In considering Omectin's motion in light of Floyd, the district court concluded:
 
 
 14
 I think that the Floyd case involved a case where the parents totally abandoned the defendant. Whereas here, the defendant had the benefit of her grandmother's upbringing until she was 11, I think. And then until she was 16 when she voluntarily left home she was with her mother and stepfather. So it isn't a case of abandonment. It's just a case of bad parenting maybe. I don't know. But it's not the Floyd case as I see it.
 
 
 15
 (R.T. at 8-9.)
 
 
 16
 Omectin argued that her parents' neglect and abuse[1] amounted to emotional, if not physical, abandonment. The court rejected this idea, stating, "[t]hat means every case where you have bad parents you're entitled to a downward departure in effect." (R.T. at 8.) Further, the court noted that Omectin's claims were uncorroborated, as she requested that her family not be contacted.[2]
 
 
 17
 From the record there appears to be no ambiguity that the district court acknowledged its ability to depart but, under the facts of Omectin's case, chose not to. Thus, this Court lacks the jurisdiction to consider the matter further.
 
 
 18
 However, in an effort to fully address Omectin's contentions, we will discuss her allegation that the district court improperly considered a legal basis for a downward departure based on Floyd.
 
 
 19
 Amendment 466 to the Sentencing Guidelines, Sec. 5H1.12, states:
 
 
 20
 Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range.
 
 
 21
 Although Sec. 5H1.12 did not go into effect until November 1, 1992,[3] the district court observed, "Also ... [the Presentence Report] states that the U.S. Sentencing Commission has proposed a new amendment to the guidelines ... lack of guidance as a youth ... indicating a disadvantaged upbringing will not be relevant grounds for imposing a sentence outside of the applicable guideline range. So ... I do not think this is a case for a downward departure." (R.T. at 9-10.)
 
 
 22
 Omectin contends that the district court violated the ex post facto clause of the United States Constitution by considering Sec. 5H1.12 in her case. The test for determining whether a criminal law violates the ex post facto clause requires that (1) the law must be retrospective, i.e., applying to events occurring before its enactment, and (2) the law must disadvantage the offender affected by it. Miller v. Florida, 482 U.S. 423 (1987).
 
 
 23
 Omectin contends that she was clearly disadvantaged because the district court felt that it could no longer depart from the guidelines on the grounds of youthful lack of guidance in light of the new section. The government argues that no disadvantage was worked on Omectin because Sec. 5H1.12 did not substantively change the law of the Sentencing Guidelines, it merely "clarified" it. We recently resolved this issue in United States v. Johns, No. 92-50697, 10651 (9th Cir. September 1993). In finding that application of the amendment prior to its effective date violated the ex post facto clause, we stated, "When the Commission adopted section 5H1.12 it changed the Guidelines in a way that made the punishment for crimes more onerous for a defendant whose background showed a youthful lack of guidance." Id. at 10662.
 
 
 24
 However, our decision in Johns does not help Ms. Omectin. The sentencing hearing transcript shows that the district court did not rely on Sec. 5H1.12 in denying Omectin's motion to depart. After finding that there was no factual basis to depart under Floyd, the court merely noted that Sec. 5H1.12 "also" provided a basis for not departing based on Omectin's alleged youthful lack of guidance.
 
 
 25
 II. EXTRAORDINARY ACCEPTANCE OF RESPONSIBILITY
 
 
 26
 The second ground for downward departure asserted by Omectin was "extraordinary acceptance of responsibility". At the sentencing hearing the district court adjusted Omectin's sentence downward three levels based on her guilty plea and on her voluntary surrender. Omectin contends that the district court erred in concluding that it was precluded by the adjustment provided in the guidelines from granting a downward departure on the ground of extraordinary acceptance of responsibility. Further, she argues that because she came forward and spared the government the expense of finding her and bringing her case to trial, she made an (A.O.B. at 16.) The district court's decision not to depart was based on the facts of Omectin's case, rather than on a mistaken belief that it lacked the authority to depart. Thus, the district court's decision is not reviewable.
 
 
 27
 The district court found that Sec. 3E1.1 fully accounted for Omectin's acceptance by providing for the 3-level adjustment. As noted above, a court may depart from the applicable guideline range only if it finds a mitigating or aggravating circumstance not adequately considered by the guidelines. In finding no such circumstance here, the district court stated, "I think that a three point reduction in the offense level is intended to cover this very situation, so I do not think that departure is proper under these circumstances...." (R.T. at 13).
 
 
 28
 Omectin claims that two out of circuit cases, United States v. Rogers, 972 F.2d 489 (2nd Cir.1992), and United States v. Crumb, 902 F.2d 1337 (8th Cir.1990), and a Ninth Circuit case, United States v. Brown, 985 F.2d 478 (9th Cir.1993), support her contention that a downward departure was appropriate and within the discretion of the district court. However, these cases were decided before an amendment to the guidelines that increased the adjustment from two to three levels based on a defendant's willingness to plead guilty and surrender voluntarily. Further, unlike the cases cited in which the Guideline range was deemed insufficient under the circumstances, the district court here clearly stated its belief that the additional one level reduction for acceptance of responsibility provided by Sec. 3E1.1(b) adequately covered Omectin's situation.
 
 
 29
 Accordingly, the district court's sentence was correctly determined based on the facts of the case, and is thus not reviewable.
 
 
 30
 AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Omectin claims that her family treated her more like a servant than a family member because she was not the natural child of her step-father. Specifically, she claims that she was expected to do all of the household chores, including care for her younger siblings while her mother and step-father were at work. Further, she alleges to have been punished for any omissions in her work by being made to kneel on a heater grating and beaten with a belt
 
 
 [2]
 Support for the district court's factual determination can be found in United States v. Roe, 976 F.2d 1216 (9th Cir.1992). In Roe, this Court found the nature and degree of Roe's abusive childhood, including constant extreme physical and sexual abuse from a drug-addicted mother and her drug dealer boyfriend qualified as an "extraordinary circumstance" that on remand the district court might wish to consider as warranting a downward departure under Floyd. Id. at 1218. The childhood circumstances described by Omectin do not approach the level found in Roe
 
 
 [3]
 Although Omectin was sentenced on November 23, 1992, the probation office utilized the sentencing guideline range effective prior to November 1, 1992, when Floyd was still a valid basis for downward departure