UNITED STATES of America,
Plaintiff–Appellee,

v.

Raymond Joseph JOHNS,
Defendant–Appellant.

No. 92–50697

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 1993.

Decided Sept. 24, 1993.

Guy C. Iversen, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Benjamin Jones, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: NOONAN, FERNANDEZ, and KLEINFELD, Circuit Judges.

FERNANDEZ, Circuit Judge:

Raymond Joseph Johns, Jr., was indicted for and pled guilty to armed bank robbery. 18 U.S.C. § 2113(a) & (d). At sentencing the district judge determined that an amendment to the Sentencing Guidelines precluded her from giving Johns a downward departure based upon his asserted youthful lack of guidance. Johns claims that application of the amendment to him violated the Ex Post Facto Clause of the Constitution. *See* U.S. Const. art. I, § 9, cl. 3. We agree. We vacate the sentence and remand for further proceedings.

## BACKGROUND

There is no dispute about the historical facts that led to this prosecution. On July 3, 1992, Johns entered a branch of Security Pacific National Bank and robbed it at gunpoint—a toy gun as it turned out. There is no need to recount the details of his bungled attempt to abscond with the funds. He was soon captured. He was then indicted and pled guilty to the offense.

Johns was sentenced on November 16, 1992. He argued that the district court should give him a discretionary downward departure based upon his youthful lack of guidance. That had been a proper ground for departure at the time Johns committed the offense. *See United States v. Floyd,* 945 F.2d 1096, 1098–1102 (9th Cir.1991), *amended,* 956 F.2d 203 (9th Cir.1992), *overruled on other grounds,* 990 F.2d 501 (9th Cir.1993) (en banc). However, by the date of Johns' sentencing the November 1, 1992 amendments to the Guidelines had gone into effect. One of those amendments added a new section which declared that, "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range." U.S.S.G. § 5H1.12 (Nov.1992).

Upon the facts presented to her, the district judge indicated that there was a basis to depart for youthful lack of guidance and that she would do so, if she could. However, she determined that the amended Guidelines precluded a departure on that ground. She also determined that the addition of section 5H1.12 was a clarifying amendment as a result of which its application to Johns would not violate the Ex Post Facto Clause. Johns then appealed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742. "Although a district court's decision not to depart normally is not reviewable, we will review de novo a district court's legal determination that the Guidelines prevent departure if the court indicates it would otherwise have departed." *United States v. Belden*, 957 F.2d 671, 676 (9th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992).

■■■ We review application of the Guidelines *de novo. United States v. Kohl*, 972 F.2d 294, 297 (9th Cir.1992). We also review the constitutional question of whether an application of the Guidelines violates the Ex Post Facto Clause *de novo. United States v. Carson*, 988 F.2d 80, 81 (9th Cir.1993).

## DISCUSSION

■■■ In general, the district court must apply the version of the Guidelines which is in effect on the date of sentencing. *United States v. Warren*, 980 F.2d 1300, 1304 (9th Cir.1992). Thus, the district court properly looked to the November 1, 1992 version as an initial matter. However, if use of those Guidelines would violate the Ex Post Facto Clause, the defendant must be sentenced, instead, under the version of the Guidelines that was in effect when he committed his offense. *Id.* In this case, that would be the version of the Guidelines which was adopted November 1, 1991, a version which did not include section 5H1.12.

We have previously made it clear that there can be no *ex post facto* problem if an amendment to the Guidelines merely clarifies its existing substance as opposed to changing its substance. *See, e.g., United States v. Restrepo*, 903 F.2d 648, 656 (9th Cir.1990), *modified on other grounds*, 946 F.2d 654 (9th Cir.1991) (en banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). That requires us to characterize the nature of the amendment which added section 5H1.12 before we turn to the closely related but more general *ex post facto* analysis.

### A. *Clarification or Change?*

■■■ It may not always be easy to determine whether an amendment clarifies or changes a guideline. We have, however, stated that an amendment to the introductory commentary which made it clear that the defendant's role in an offense was not limited to the offense of conviction was a clarifying amendment, despite some dicta to the contrary in an earlier case. *United States v. Lillard*, 929 F.2d 500, 502–03 (9th Cir.1991). We have reached the same conclusion regarding amendments which clarify application notes. *See United States v. Lonczak*, 993 F.2d 180, 182 n. 4 (9th Cir.1993). We have also given weight to the Sentencing Commission's own declaration that an amendment *was* intended to clarify the intent of the Guidelines. *Restrepo*, 903 F.2d at 656. Similarly, in *United States v. Webster*, 996 F.2d 209, 211 (9th Cir.1993), we pointed out that comments in our prior cases about the lack of availability of role adjustments to sole participants in offenses were no longer valid. That was because the Commission had clarified the Guidelines and the opposite was now true. *Id.* at 212 n. 4. In fact, we said, that clarifying amendment now made it appear that absent unusual circumstances, merely being a drug courier did not qualify a person for a downward departure, although a downward adjustment for being a minor participant might now be available. *Id.* at 211–12. We were careful not to decide whether other grounds for departure, expressly approved by us in an earlier case, were also affected by the clarifying amendment. *Id.* at 211 n. 2. Therefore, we did not consider whether elimination of those grounds could have *ex post*

*facto* effect. However, we did make reference, without approval or disapproval, to *United States v. Saucedo,* 950 F.2d 1508 (10th Cir.1991). There, the court decided that an amendment—even one declared to be clarifying—was a true change to the substance of the Guidelines because it overruled circuit precedent. *Id.* at 1514.

When the Commission adopted section 5H1.12 it did not say that the amendment was intended to be clarifying in nature. The government argues that the amendment was clarifying because it merely clarified the Commission's intent that youthful lack of guidance never was a proper basis for departure. In pursuit of that conclusion, the government points to a number of preexisting provisions in the section 5H1 series which discouraged the use of certain considerations. Thus, the Guidelines provided that certain considerations are not "ordinarily" relevant. Among those are: age, including youth, section 5H1.1; education and vocational skills, section 5H1.2; mental and emotional conditions, section 5H1.3; physical condition or appearance, section 5H1.4; employment record, section 5H1.5; and family and community ties, section 5H1.6. As the government sees it, section 5H1.12 is just a clarification of the penumbrae emanating from these preexisting elements.

We think that argument must fail for two reasons. First, we were well aware of those longstanding provisions when we decided *Floyd* and we determined that certain of them did not preclude a departure for youthful lack of guidance. 945 F.2d at 1100–01. (Sections 5H1.2 and 5H1.6 were specifically considered.) Second, and more telling, each of those restrictions was limited by the adverb "ordinarily." Thus, in proper circumstances a departure could be founded upon those grounds. We recognized as much in *Floyd,* 945 F.2d at 1100 n. 3.

In fact, before the adoption of section 5H1.12 only one of the Part H sections declared that certain factors were never relevant, and that was section 5H1.10. It precluded consideration of race, sex, national origin, creed, religion, and socio-economic status. It did so based, in part, on 28 U.S.C. § 994(d) which required that the Guidelines

be entirely neutral in those respects. In the departure area, youthful lack of guidance now joins that limited set of prohibited considerations, but does so without a specific statutory direction. Of course, 5H1.12 does not declare youthful lack of guidance to be an improper ground for imposing a sentence within the applicable Guideline range.

We do not see how a new Guidelines section which enacts a prohibition that did not exist before can possibly be called a mere clarification. Whatever the Commission might have thought when it first beheld *Floyd,* it has now changed the Guidelines to eliminate the effects of that case. No matter how affecting a defendant's story of his upbringing might be, a court may not depart from the applicable Guideline range on that ground. That is a definite change to the preexisting law in this circuit.

## B. *Ex Post Facto Clause.*

 The mere fact that the Guidelines have changed will not cause their application to violate the Ex Post Facto Clause. As we recently said in *Aponte v. Gomez,* 993 F.2d 705, 708 (9th Cir.1993) (citations omitted):

> The Ex Post Facto Clause forbids both the punishment for acts not punishable at the time the offense was committed and the imposition of an additional punishment beyond that permitted at the time of the offense. Violation of the Ex Post Facto Clause occurs where there is (1) retroactive application of a criminal law, and (2) such application disadvantages the defendant.

This is really a restatement of longstanding law declared by the Supreme Court. In *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), the Court said:

> It is settled, by decisions of this court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is pro-

hibited as *ex post facto*. The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused.

*Id.* at 169–70, 46 S.Ct. at 68–69.

This definition was reaffirmed in *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). The Court made it clear that mere disadvantage to the defendant will not result in an *ex post facto* problem. *Id.* at 46–52, 110 S.Ct. at 2721–24. For example, a disadvantage might come about because of a change in the number of jurors or a change in the way that certain errors are corrected on appeal, but those will not implicate the Ex Post Facto Clause. *Id.* at 51–52, 110 S.Ct. at 2724. On the other hand, there can be no formalistic distinction between procedural and substantive changes. Changes, whatever their form, can lead to *ex post facto* violations because "[s]ubtle *ex post facto* violations are no more permissible than overt ones." *Id.* at 46, 110 S.Ct. at 2721. Turning to the statute before it, the Court held that its application did not present *ex post facto* problems. The statute did not "punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed." *Id.* at 51–52, 110 S.Ct. at 2724.

It could be argued that adoption of section 5H1.12 is similarly benign. It certainly does not make any previously innocent act criminal and does not take away any defense. Moreover, it does not change the possible maximum punishment which the armed robbery statute itself prescribed for the offense in question. What the Commission did was enact a guideline which took a goodly mea-sure of discretion away from district judges. Before that was taken away, a district judge could have departed downward upon finding a youthful lack of guidance; after that the court could not do so. But is that enough to make the punishment for the crime more burdensome? We hold that it is.

Of course, the fact that the change is made to mere Guidelines is not sufficient to insulate it from the Ex Post Facto Clause. The Supreme Court made that clear in *Miller v. Florida*, 482 U.S. 423, 435, 107 S.Ct. 2446, 2453–54, 96 L.Ed.2d 351 (1987); *see also, United States v. Schram*, 9 F.3d 741, 742–43 (9th Cir.1993); *United States v. Castro*, 972 F.2d 1107, 1111–12 (9th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993).

In *Miller*, the legislature increased the presumptive sentencing range for the defendant's crime after the crime was committed. 482 U.S. at 425–28, 107 S.Ct. at 2448–50. The sentencing judge could depart from that range if clear and convincing reasons for doing so were given in writing. *Id.* at 426, 107 S.Ct. at 2449. The Court noted that it was considering a law, rather than a flexible administrative guidepost, and that even if judges could depart upon making the appropriate findings by clear and convincing evidence, the defendant's sentence was directly and adversely affected. *Id.* at 435, 107 S.Ct. at 2453–54. It is not easy to distinguish *Miller* from the case at hand. Before the promulgation of section 5H1.12 the district court could lower the Guideline range if it found and declared facts that would justify a departure. After the promulgation, the court could not do so. Before the change, a district court had very broad discretion in the area of youthful lack of guidance. It could probe deeply into claims of misguided, or unguided, youth. In *Floyd* itself we said that even the fact that a drug dealer had been imprisoned at an early age had significance in considering youthful lack of guidance. 945 F.2d at 1099. Indeed, from *Floyd* it appears that this ground of departure was a factor that could be referred to and used over and over again. It was not limited to

the defendant's first adult sentencing. 945 F.2d at 1099–1100.

We recognize that even before the change a person could not have predicted that a district judge would depart. That truth makes no real difference. The Supreme Court made that point in *Lindsey v. Washington*, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937). There, a change in the law made the sentence by a court a mandatory fifteen years and took away the court's power to exercise its discretion in setting the maximum at between six months and fifteen years. *Id.* at 397–400, 57 S.Ct. at 797–98. The removal of that discretion constituted an *ex post facto* violation because "[r]emoval of the *possibility* of a sentence of less than fifteen years ... operates to [the defendants'] detriment in the sense that the standard of punishment adopted by the new statute is more onerous than that of the old." *Id.* at 401, 57 S.Ct. at 799 (emphasis added). As the Court explained in a later case, the removal of discretion was a violation, even if "the sentence [the defendant] received under the new law was not more onerous than that which he *might* have received under the old." *Dobbert v. Florida*, 432 U.S. 282, 300, 97 S.Ct. 2290, 2302, 53 L.Ed.2d 344 (1977) (emphasis added); *see also Flemming v. Board of Parole*, 998 F.2d 721, 725 (9th Cir.1993) (change in parole regulations violates *ex post facto* clause, despite existence of discretion). Here the Commission has, in effect, said that a more severe sentence which a defendant *could* have received under the *Floyd* regime is the sentence he *must* receive under the Commission's post-*Floyd* regime.

That the removal of discretion can, indeed, implicate the Ex Post Facto Clause is further illustrated by reflecting on the undeniable fact that application of the Guidelines to offenses committed before November 1, 1987 would have constituted a violation of that clause. *Cf. Castro*, 972 F.2d at 1112 (amend-ed Guidelines cannot be applied to offense completed before their effective date); *United States v. Rewald*, 835 F.2d 215, 216 (9th Cir.1987) (Sentencing Reform Act does not apply to conduct before November 1, 1987). But all the Guidelines did was take discretion away from district judges. No defendant could claim that before the Guidelines were adopted his sentence would have been less onerous. The sentence itself was left to the essentially unreviewable discretion of the district judge. *See, e.g., United States v. Tucker*, 404 U.S. 443, 446–47, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Citro*, 842 F.2d 1149, 1153 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988). So, too, with the change wrought by section 5H1.12. No defendant could claim that before it was adopted his sentence would have been less onerous.[1] It, too, simply took an essentially unreviewable discretion away from the district judge.

Thus, application of the Ex Post Facto Clause to this case requires no act of judicial sortilege. Johns lost a valuable opportunity to have a lower sentence imposed upon him. For all practical purposes the punishment he was open to increased significantly, both as a theoretical matter and, in this instance, as a matter of fact. That cannot be permitted.[2]

CONCLUSION

When the Commission adopted section 5H1.12 it changed the Guidelines in a way that made the punishment for crimes more onerous for a defendant whose background showed a youthful lack of guidance. A Guidelines sentencing range which was subject to lowering if the district court exercised its discretion became a fixed range when that discretion was taken away. Application of the changed law to Johns would violate the Ex Post Facto Clause. Thus, the district

---

1. We recognize that at sentencing Judge Marshall said that Johns would have received a lower sentence before the adoption of § 5H1.12. We are, of course, referring to what a defendant could claim before the judge actually made a pronouncement.

2. The government asks us to decide that, as a matter of law, Johns did not show a youthful lack of guidance. Review of the permissibility of departure would be premature. Because the district judge did not think she could depart, she has not yet had occasion to apply the factors enumerated in *United States v. Lira–Barrazza*, 941 F.2d 745 (9th Cir.1991) in making her ultimate determination.

court must now apply the 1991 version of the Guidelines along with the gloss this court put upon that version in *Floyd.* *See Warren,* 980 F.2d at 1304 (use single version of the Guidelines); *see also* U.S.S.G. § 1B1.11(b) (Nov. 1992) (same).

Sentence VACATED and REMANDED for resentencing.