21 F.3d 1117
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony L. GURULE, Defendant-Appellant.
 No. 93-50451.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 8, 1994.
Decided April 11, 1994.
 
 Before: PREGERSON, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Petitioner Anthony Lawrence Gurule, Sr. appeals his conviction by a jury and the sentence imposed upon him by the District Court for assault with a dangerous weapon and aiding and abetting in that assault, in violation of 18 U.S.C. Secs. 113(c). The District Court sentenced Gurule to 60 months following his conviction by a jury. We have jurisdiction pursuant to 18 U.S.C. Sec. 3742(a). We affirm.
 
 BACKGROUND
 The Incident
 
 3
 Gurule, co-defendant Ramon Duron III, and victim Paul Koonce were inmates at the United States Penitentiary at Lompoc, California on October 30, 1991. All three men were housed in the H-Unit, the segregation wing of the prison. Gurule and Duron were also cellmates.
 
 
 4
 On that day, at approximately 8:40 a.m., Gurule, Duron, victim Koonce, and another inmate were taken from their cells by Correctional Officers Freddie Smith and Neal LeMaire for recreation time in the H-Unit outdoor recreation area. Before leaving their cells, all three men were strip-searched, their clothes were searched, and they were reclothed in prison issue shorts, T-shirts, socks, and shoes and handcuffed. After the searches, the men were escorted from their cells down the three feet wide range walkway, which passed in front of other inmates' cells. Gurule and Duron, who were housed in cell 13, had to pass twelve other cells to enter the recreation area.
 
 
 5
 Gurule, Duron, and Koonce had to pass through a "trap" which linked the prison building and the outdoor recreation cages. To operate the trap, the trap door on the prison side is first opened, the inmates walk into the trap, and the prison side door is then closed. The trap door on the outside of the prison is then opened, and the inmates are escorted into the recreation area. In October 1991, inmates were pat searched in the trap before being escorted outside; however, this did not include a search of the inmates' socks and shoes.
 
 
 6
 Before and after inmates were given recreation, the recreation cages were searched to ensure that no contraband was in the cages. The recreation cages measure approximately ten feet by twenty feet. On October 30, 1991, Officer Junior Fairweather was assigned to monitor the inmates' activities while they were in the H-Unit recreation cages. After going through the trap, Gurule, Duron, Koonce, and the fourth inmate were secured in recreation cage 3, and their handcuffs were removed.
 
 
 7
 Shortly thereafter, Officer Fairweather saw Gurule and Duron speaking furtively in a corner of the cage. A few minutes later, Fairweather saw Gurule and Duron standing on both sides of Koonce having a heated argument with Koonce, which developed into a fist fight. Gurule and Duron struck Koonce; Koonce did not fight back but tried to retreat. Fairweather yelled several times for the inmates to stop, but they ignored him.
 
 
 8
 Fairweather then observed Duron remove a prison-made knife from his sock and begin stabbing at Koonce. While Fairweather radioed for backup, Gurule and Duron continued to stab, hit, and kick Koonce in the head, neck, and chest area. Other correctional officers who arrived on the scene to assist Fairweather observed Gurule stab Koonce, while Duron kicked and hit Koonce. The fourth inmate in the cage had moved away and turned his back on the fight when it had began.
 
 
 9
 Once sufficient backup staff had arrived to control the situation, the officers opened the recreation cage and "swarmed" the inmates. Fairweather took the prison-made knife out of Duron's hand in the cage when Duron was subdued. The knife was made from a six-inch long by 3/4-inch wide piece of sharpened metal, with gauze cloth wrapped around one end as a handle. A search of the cage following the incident revealed two ink pens, one of which was broken. Fairweather tagged the confiscated prison-made knife and placed it in the penitentiary's safe as evidence.
 
 
 10
 Koonce was taken to the prison hospital for treatment of puncture wounds and lacerations to his face, neck, and chest, knees and elbows. The most serious wound was a cut on the right side of his neck below the jaw in an area near a major external carotid artery.
 
 
 11
 According to the Presentence Report, following treatment Koonce objected to being returned to his cell in H-Unit because he believed that he would experience further problems if he remained there. Koonce explained that he thought he was assaulted because he had interfered in a drug debt dispute between his cellmate and Gurule and Duron.
 
 Trial Testimony
 
 12
 At trial, Gurule and Duron attempted to impeach the testimony of Officer Fairweather by questioning him about minor variations in reports of the incident prepared by him and in his interview with FBI Special Agent Dan Payne. The defendants also brought out the fact that no forensic analysis was made of the weapon seized from Duron by Fairweather.
 
 
 13
 Duron also called victim Koonce as a witness. Koonce testified that he had thrown the first punch when he saw Gurule approach in a hostile manner. Koonce also testified that he and Gurule were involved only in a fist fight, and that Duron was not involved in the fight except in an effort to break it up. In addition, Koonce stated that his wounds could have been caused by fingernail scratches, his fall to the ground, and bites. On cross-examination, Koonce acknowledged the existence of a prisoner "code of silence," and indicated that violation of the code could result in physical harm.
 
 
 14
 Duron testified at trial that his hitting and kicking was intended to break up the fight. He further testified that neither he nor Koonce had a knife in the cage. Finally, Duron testified that he and Gurule never discussed the incident after it occurred, although Duron admitted that he and Gurule had plenty of opportunity to discuss the situation. Gurule chose not to testify and presented no evidence.
 
 
 15
 The Government offered the testimony of various correctional officers involved in the incident. Although Officer Fairweather was the only witness who could identify the weapon in Duron's possession, Officer Smith testified that Gurule was stabbing Koonce with a "shiny item." Officers Smith, LeMaire, and Garcia also testified that they saw Gurule and Duron kick and hit Koonce with a stabbing motion in the head, neck, and chest. Further, the Officers indicated that Koonce did not strike Gurule or Duron.
 
 
 16
 In addition, Officers Garcia and Smith testified that inmates often make weapons out of metal objects which can be found in their cells. The bunk beds, desks, commode, and sink in H-Unit cells are all made of metal. Further, the officers testified that the weapon seized from Duron could have been fashioned from the metal from the bunk bed located in his cell. Finally, Officer Garcia testified that contraband such as the weapon involved here was sometimes passed between inmates during the walk from inmates' cells to the recreation area.
 
 
 17
 On March 9, 1993, a jury convicted Gurule and Duron of assault with a dangerous weapon and aiding and abetting in that assault, in violation of 18 U.S.C. Sec. 113(c). Duron was also convicted of possession of a prohibited object in prison (the prison-made knife), in violation of 18 U.S.C. Sec. 1791(a)(2).
 
 Sentencing Hearing
 
 18
 The Presentence Report indicated that Gurule was subject to a total offense level of 23 for conviction of the crime charged: a base offense level of 15, a four-level increase for use of a "dangerous weapon," plus a four-level increase for "serious bodily injury" to Koonce, with a criminal history category VI. This resulted in a recommended sentence of 60 months under the Sentencing Guidelines.[1]
 
 
 19
 At the sentencing hearing, the District Court denied Gurule's request for a two-level downward departure for acceptance of responsibility under Sentencing Guideline Sec. 3E1.1. The District Court also declined to depart downward based on Gurule's asserted youthful lack of guidance. However, the District Court did reduce Gurule's base offense level by two levels, from 23 to 21, finding that Koonce had suffered only "bodily injury," rather than "serious bodily injury," as defined in Secs. 2A2.2(b)(3)(A) and 2A2.2(b)(3)(B). Gurule was sentenced to 60 months imprisonment, to be followed by a three year term of supervised release, to be served consecutively to his current prison term.
 
 
 20
 Gurule raises several issues on appeal. First, he appeals his jury conviction, contending that the evidence presented at trial was insufficient to support a conviction for assault with a dangerous weapon. Second, Gurule appeals his sentence based on the District Court's denial of his request for downward departure based on his asserted youthful lack of guidance and his request for a two-level reduction for acceptance of responsibility.
 
 ANALYSIS
 1. Sufficiency of the Evidence
 
 21
 In a challenge to the sufficiency of the evidence, we will uphold the verdict where, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We respect the exclusive province of the jury to determine the credibility of witnesses and to resolve conflicts in evidence. United States v. Gillock, 886 F.2d 220, 222 (9th Cir.1989). Further, we assume that the jury resolved all conflicts in favor of the verdict. Id.
 
 
 22
 Gurule contends that no reasonable jury could have found him guilty as charged because Officer Fairweather's testimony was "inherently unreliable," "contradicted by his own previous statements," and "at odds with the testimony of other witnesses and the physical evidence." Further, Gurule states that Fairweather was the only witness who described Gurule and Duron as the aggressors in the assault, which directly contradicted the testimony of both Koonce and Duron. In addition, Gurule asserts that Fairweather was the only witness who claimed to see the weapon. Based on these assertions, Gurule concludes that Fairweather's testimony is "discredited," and that the remaining "circumstantial evidence must be far more compelling than that presented" for the conviction to be upheld.
 
 
 23
 We reject Gurule's characterization of Fairweather's testimony. Our careful review of the trial transcript persuades us that the inconsistencies in Fairweather's various reports concerning the incident were minor. And, although Fairweather omitted some details from one report to the next,[2] the information he later provided was not contradictory to his earlier reports. Fairweather testified that he intended all of his statements to be taken together. (ER at 144-48.)
 
 
 24
 But more to the point, Gurule ignores the testimony of the other correctional officers who were present at the incident which corroborated Fairweather's testimony. Officer Smith testified that Gurule stabbed Koonce with a "shiny item." Officers Smith, LeMaire, and Garcia testified that they saw Gurule and Duron kick and hit Koonce with a stabbing motion. Further, the officers indicated that Koonce did not strike Gurule or Duron. Although Gurule argues that Fairweather's testimony was "at odds with the testimony of other witnesses," the only witnesses offering contradictory testimony were defendant Duron and victim Koonce, who admitted on cross-examination that the prisoner's "code of silence" imposed a standard of conduct under which inmates were not to implicate each other in any type of wrong-doing when questioned by prison or police authorities. (ER at 253-54.)
 
 
 25
 Gurule further attempts to discredit Fairweather by arguing that Fairweather's testimony contradicted the physical evidence presented at trial. Specifically, Gurule points out that no blood could be seen on the knife blade or its cloth handle, although Koonce received numerous cuts and lacerations and the investigating offer found blood on the floor of the recreation cage. Gurule reasons that "common sense" "suggests" that some blood would have adhered to the knife if it had been used in a fight.
 
 
 26
 We note first that the evidence presented need not be wholly inconsistent with every reasonable hypothesis except that of guilt for a jury to reasonably convict. United States v. Goode, 814 F.2d 1353, 1355-56 (9th Cir.1987). Although the knife appeared clean at trial, Gurule offered no forensic evidence at trial to show that the knife had not been used in a fight or had been wiped clean following the fight. Further, Gurule offered no testimony that the knife had either not been properly preserved as evidence through a faulty chain of custody, or that Koonce's wounds were inconsistent with those that would be made by the prison-made knife.[3]
 
 
 27
 Gurule also argues that "[n]o evidence was found suggesting that the [knife] was made from materials in appellant's cell." Again, this misstates the evidence presented at trial. The Government offered proof for the jury's consideration by way of the testimony of Officers Garcia and Smith that the knife was fashioned from a metal piece from a bunk bed.
 
 
 28
 Gurule looks to numerous out of circuit cases to support his contention that the evidence presented by the Government during trial was insufficient to support the conviction. We find these cases to be of little value. Each case cited relies, as Gurule states, on the "absence of credible eyewitness testimony." We do not find Officer Fairweather's testimony--nor that of the other officers who arrived immediately after the assault began--to be unreliable. All of the Government's witnesses relayed generally consistent and compatible versions of the events of the morning of October 30, 1991.
 
 
 29
 Both the jury and the District Court judge[4] found in favor of the testimony offered by the Government's witnesses. Viewing the record before us in the light most favorable to the Government, we cannot say that there was insufficient evidence to support Gurule's conviction beyond a reasonable doubt.
 
 2. Youthful Lack of Guidance
 
 30
 Gurule next appeals the District Court's denial of his request for downward departure based on youthful lack of guidance. We review the District Court's interpretation of the Sentencing Guidelines de novo. United States v. Blaize, 959 F.2d 850, 851 (9th Cir.), cert. denied, 112 S.Ct. 2954 (1992).
 
 
 31
 Initially we must determine whether the District Court's refusal to depart downward is reviewable. United States v. Belden, 957 F.2d 671, 676 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992). We lack jurisdiction to review the District Court's refusal to depart downward unless two conditions are satisfied. 18 U.S.C. Sec. 3742(e)(2). First, the record must indicate that the District Court believed that it lacked the discretion to depart. United States v. Brown, 985 F.2d 478, 480 (9th Cir.1993). Second, the record must not indicate that the District Court would not depart had it the authority to do so. Id.
 
 
 32
 Gurule argues that the District Court erred in denying Gurule's request for a downward departure because the District Court believed that it lack the discretion based on an amendment to the Sentencing Guidelines prohibiting the use of youthful lack of guidance as a ground for departure. U.S.S.G. Sec. 5H1.12. As Gurule correctly contends, our holding in United States v. Johns, 5 F.3d 1267 (9th Cir.1993), precludes the District Court from applying Sec. 5H1.12 retroactively because it violates the Ex Post Facto clause.
 
 
 33
 We find, however, that the District Court did not rely on Sec. 5H1.12 in denying Gurule's request. Although counsel for the Government and Gurule discussed the Sentencing Guidelines amendment at the sentencing hearing, the District Court stated that it was denying Gurule's request based on the factual analysis contained in the Government's argument[5] opposing Gurule's request.
 
 
 34
 An additional downward departure for lack of youthful guidance, that motion is respectfully denied. The reasons are fully articulated on page 12 of the Government's opposition to Mr. Gurule's position with respect to sentencing factors.
 
 
 35
 (ER at 288-89.)
 
 
 36
 Thus, we find that we lack the jurisdiction to consider this issue because the District Court's refusal to downward depart was not based on its erroneous belief that it lacked the discretion to do so.
 
 3. Acceptance of Responsibility
 
 37
 Finally, Gurule appeals the District Court's refusal to grant his request for a two-level reduction based on acceptance of responsibility. Although we review the District Court's application of the Sentencing Guidelines de novo, United States v. Fagan, 996 F.2d 1009, 1017 (9th Cir.1993), we review the District Court's determination of whether a defendant accepted responsibility for clear error. United States v. Martinez-Gonzalez, 962 F.2d 874, 878 (9th Cir.1992). The sentencing judge's determination is entitled, however, to "great deferance" because he is "in a unique position to evaluate a defendant's acceptance of responsibility." Id. (citing U.S.S.G. Sec. 3E1.1, comment. (n. 5).
 
 
 38
 Gurule argues that the District Court erred in refusing to grant his request for a two-level reduction for acceptance of responsibility because Gurule "never denied participating in the fight with the victim."
 
 
 39
 Sentencing Guideline Sec. 3E1.1 provides, in relevant part:
 
 
 40
 (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
 
 
 41
 (b) A defendant may be given consideration under this section without regard to whether his conviction is based on a guilty plea or finding of guilt by the court or jury or the practical certainty of conviction at trial.
 
 
 42
 We find no error in the District Court's refusal to grant Gurule's request because we find that Gurule has not accepted responsibility for his role in the assault on Koonce. The Sentencing Guidelines instruct us that courts should consider, among other factors, whether the defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction" and "the timeliness of defendant's conduct in manifesting the acceptance of responsibility." Further, this reduction is not intended for a defendant "who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. Sec. 3E1.1, App. note 2.
 
 
 43
 Gurule did not admit his guilt prior to trial or testify at his trial. Nor has he yet admitted the essential factual elements of the crime for which he was charged and convicted, assault with a dangerous weapon and aiding and abetting that offense. Although Gurule has admitted to participating in a fight--which he can hardly deny given the overwhelming eyewitness and circumstantial evidence presented at trial--he continues to deny use of the knife in the assault. Further, we see no evidence of his expression of remorse for his participation in the assault.
 
 
 44
 Thus, we find no error in the District Court's denial of Gurule's request for a two-level reduction for acceptance of responsibility.
 
 
 45
 AFFIRMED.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Under the Sentencing Guidelines, an offense level of 23, coupled with a criminal history category of VI, results in a guideline range of 92 to 115 months. Pursuant to Sec. 5G1.1(a), however, "[w]here the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."
 
 
 [2]
 For example, Gurule contends that there were "serious concerns" about the accuracy and truthfulness of Fairweather's reports because the first report that Fairweather filed failed to mention that he saw Duron remove the knife from his sock, or that he saw Duron stab the victim. Fairweather testified, however, that he made the second report because his first report lacked sufficient detail. (ER at 90-91.)
 
 
 [3]
 In his opening brief, Gurule states that Lompoc's Chief Medical Officer, Sterling Pollack, M.D., examined Koonce's injuries, and determined that although the "cuts" were not life threatening, one "cut" required three or four sutures. No where does the record indicate that Koonce's injuries were caused exclusively by bites or scratches as Koonce stated in his testimony
 
 
 [4]
 Judge Takasugi denied Gurule's motion for acquittal
 
 
 [5]
 Pages 12 and 13 of the Government's opposition applied the factors articulated in United States v. Floyd, 945 F.2d 1096 (9th Cir.1991), corrected, 956 F.2d 203 (9th Cir.1992) and United States v. Anders, 956 F.2d 907 (9th Cir.1992), cert. denied, 113 S.Ct. 1592 (1993) to Gurule's situation. The Government concluded that Gurule was not entitled to a downward departure based on youthful lack of guidance because Gurule's family situation was in no way as harsh as that of the defendants in Floyd and Anders. Further, the Government concluded that Gurule's criminal behavior for which he was convicted was in no way related to the circumstances of his upbringing, as was the criminal conduct present in Floyd and Anders