29 F.3d 635
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arlon CHAPMAN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dun Alan O'CONNOR, Defendant-Appellant.
 Nos. 93-30002, 93-30003.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 3, 1994.*
Decided June 28, 1994.
 
 Before WRIGHT, CANBY and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Arlon Chapman and Dun O'Connor appeal the sentences imposed upon them following their guilty pleas to several drug related offenses. They argue that the sentencing judge misapplied provisions of the United States Sentencing Guidelines. We vacate Chapman's sentence and remand his case for resentencing. We affirm O'Connor's sentence.
 
 BACKGROUND
 
 3
 Appellants, along with six other persons, were indicted for numerous alleged drug-related offenses. Chapman ultimately pleaded guilty to three counts of cocaine distribution, and four counts of marijuana distribution and conspiracy to distribute marijuana, all in violation of 21 U.S.C. Sec. 841(a)(1). O'Connor pleaded guilty to the same conspiracy charge and one count of money laundering in violation of 18 U.S.C. Sec. 1956(a)(1)(A)(i).
 
 
 4
 O'Connor and a codefendant named Alex Trottier headed the marijuana distribution conspiracy, supplying the drugs to their coconspirators for distribution. Chapman allegedly occupied a middle-level position in the distribution network, selling marijuana in 1/4 ounce quantities to "joint dealers" who in turn sold smaller amounts to individual drug consumers.
 
 I. Chapman
 
 5
 Chapman asserts that the district court improperly increased his base offense level by two levels under section 3B1.1(c) of the Sentencing Guidelines for being an "organizer, leader, manager or supervisor in any criminal activity." We agree with Chapman's contention.[1]
 
 
 6
 That Chapman occupied a middle-level position in the distribution network is not enough by itself to sustain a finding that he was an "organizer, leader, manager or supervisor" in criminal activity. For an increase under section 3B1.1, there must be evidence to support a finding that the defendant occupied one of the four specified roles, not merely that the defendant was more culpable than some others who participated in the crime. United States v. Hoac, 990 F.2d 1099, 1111 (9th Cir.1993), cert. denied, 114 S.Ct. 1075 (1994). To sustain a finding that Chapman in fact played one of the four specified roles, there must be evidence that he "exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime." United States v. Mares-Molina, 913 F.2d 770, 772 (9th Cir.1990).[2]
 
 
 7
 The government presented no evidence suggesting that Chapman exercised any control over the street-level dealers to whom he sold, or that he directed their activities in any way. When approached, Chapman received orders for drugs. Because of his connections with O'Connor and Trottier, he was able to procure the drugs to complete the sales. Merely arranging the logistical details necessary to conclude a drug transaction, however, does not make one an organizer, leader, manager or supervisor in criminal activity. Chapman's activities here simply do not meet the requirements of Mares-Molina. Our decision in United States v. Varela, 993 F.2d 686 (9th Cir.), cert. denied, 114 S.Ct. 232 (1993), is not inconsistent with our analysis here. Varela does not stand for the proposition that merely procuring drugs for sale and arranging the logistics of a drug transaction is sufficient to sustain a finding that a defendant is an organizer, leader, supervisor or manager. Although our discussion of the evidence in that case is sparse, the evidence we recited supported the ultimate conclusion that "Varela organized people." Id. at 692. In addition to Varela's execution of drug transactions, the district court in that case had determined that Varela's suppliers, who were numerous, did not occupy leadership roles and were less culpable than Varela. In other words, Varela was the organizing or managing force in his distribution operation.
 
 
 8
 In contrast, the evidence in this case overwhelmingly established that O'Connor and Trottier were the organizers of the distribution network. All of the drugs Chapman distributed ultimately came from the single O'Connor-Trottier connection.[3] Chapman worked at the direction of O'Connor and Trottier; they chastised him when he weighed drug quantities too heavily and refused to trust him with drugs for which he had not yet paid. Chapman took directions from the top, and gave none at the bottom.
 
 
 9
 In sum, we find this case indistinguishable from Hoac in that the evidence is insufficient to sustain a finding that Chapman was an organizer, leader, manager or supervisor of criminal activity. The government presented no evidence that he controlled others in the commission of the crime or organized others for the purpose of committing the crime.[4] The district court clearly erred in finding that Chapman qualified for the enhancement.
 
 
 10
 We accordingly vacate Chapman's sentence and remand his case for resentencing.
 
 II. O'Connor
 A.
 
 11
 O'Connor was sentenced on December 12, 1992. Consequently, the November 1992 guidelines should have been applied. See U.S.S.G. Sec. 1B1.11(a). Unfortunately, the probation officer preparing the presentence report mistakenly used the November 1991 guidelines in calculating O'Connor's sentence, and the court did the same. O'Connor complains that this error resulted in an increased offense level because the new version of the guidelines narrowed the definition of relevant conduct, which is used to determine the amount of marijuana attributable to a defendant in calculating his sentence.[5] The government contends that this issue is unreviewable because O'Connor did not object to the use of the November 1991 guidelines at sentencing. We conclude that O'Connor's sentence must be affirmed.
 
 
 12
 Because O'Connor failed to object, we may reverse only if the trial court's error was "plain" and "affect[ed] substantial rights." United States v. Olano, 113 S.Ct. 1770, 1776-79 (1993). We are to exercise our discretion to correct the error only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." We are satisfied that no such untoward result occurred here.
 
 
 13
 O'Connor is correct that the November 1992 Guidelines narrowed the definition of relevant conduct by substituting a foreseeability test in place of conspiracy liability principles for determining what coconspirator conduct may be attributed to the defendant for sentencing purposes.[6] The district court, applying the 1991 Guideline standard, based O'Connor's sentence upon the entire amount of marijuana distributed by the conspiracy--678 kilos. Nevertheless, we are not convinced that the district court would have found the amounts it attributed to O'Connor unforeseeable if it had applied the November 1992 guidelines. The district court found that O'Connor was the "kingpin of this conspiracy." The court stated that O'Connor as even "more culpable than Mr. Trottier" and labelled O'Connor the "money man" behind the conspiracy. These findings, and the absence of any evidence that the drug amounts were not foreseeable by O'Connor, leave us unpersuaded that a different sentence would have resulted had the district court used the correct version of the Guidelines. O'Connor's substantial rights were not affected by the error. Accordingly, we decline to overturn the sentence.
 
 B.
 
 14
 O'Connor next asserts that the district court was required to perform a foreseeability analysis before increasing his offense level under section 2D1.2 of the guidelines because of a coconspirator's sale of marijuana near a school. Because O'Connor did not raise this issue in the district court, our review again is for plain error.
 
 
 15
 O'Connor analogizes to United States v. Garcia, 909 F.2d 1346 (9th Cir.1990), in asserting that the district court erred in not determining whether his coconspirator's sale near a school was foreseeable to him. In Garcia, we held that a district court cannot impose an offense level increase for a coconspirator's possession of a weapon during the commission of a drug offense without performing an analysis of whether the coconspirator's possession of the weapon was foreseeable to the defendant being sentenced. Id. at 1349.
 
 
 16
 We need not determine whether the logic underlying our decision in Garcia mandates that a foreseeability analysis also be performed before increasing a defendant's offense level for a coconspirator's sale of a controlled substance near a protected location. Even if the district court's failure constitutes error, O'Connor has not shown that the result would have been different had the district court inquired into the foreseeability of the coconspirator transaction. Thus, we are not convinced that the error, if any, affected O'Connor's substantial rights.
 
 C.
 
 17
 O'Connor next disputes the district court's determination that 400 to 700 kilos of marijuana were distributed by the conspirators. We review this factual finding under the clearly erroneous standard. United States v. Mares-Molina, 913 F.2d 770, 772 (9th Cir.1990).
 
 
 18
 The probation officer who prepared the presentence report listed in detail numerous documented transactions in support of her conclusion that approximately 678 kilos of marijuana were handled during the conspiracy. The district court's adoption of this finding was not clearly erroneous. Indeed, O'Connor's counsel himself admitted during the sentencing hearing that, although O'Connor disputed having personal knowledge of more than 400 kilos, "I think that the court would in fact be justified in finding that the amount involved ... in this particular case would be 400 to 700 kilos." The district court's determination was not clearly erroneous.
 
 D.
 
 19
 O'Connor asserts that the district court erred in refusing to grant him a two level reduction for acceptance of responsibility under section 3E1.1(a) of the guidelines. We accord sentencing judges' determinations on the issue of acceptance of responsibility great deference. United States v. Smith, 905 F.2d 1296, 1301 (9th Cir.1990). The determination inherently involves an assessment of the defendant's sincerity that the district court is in a far superior position than ours to judge. O'Connor has not convinced us that our general rule of deference should not be followed in this instance.
 
 E.
 
 20
 As a last point, O'Connor's asserts that his attorney's failure to raise several of his sentencing issues in the district court amounted to ineffective assistance of counsel. Ineffective assistance claims normally are best resolved through habeas proceedings. United States v. Sanclemente-Bejarano, 861 F.2d 206, 210-11 (9th Cir.1988). Although we sometimes will resolve these claims on direct appeal, see United States v. Cochrane, 985 F.2d 1027, 1029-30 (9th Cir.1993), we decline to do so in this appeal.
 
 CONCLUSION
 
 21
 In summary, we hold that the district court's determination that Chapman was an organizer, leader, manager or supervisor of criminal activity is clearly erroneous. We therefore vacate his sentence and remand for resentencing. We affirm O'Connor's sentence.
 
 
 22
 No. 93-30002: SENTENCE VACATED; REMANDED FOR RESENTENCING.
 
 
 23
 No. 93-30003: AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 We review the district court's factual determination that Chapman was an organizer, leader, manager or supervisor within the meaning of section 3B1.1 under the clearly erroneous standard. United States v. Mares-Molina, 913 F.2d 770, 772 (9th Cir.1990)
 
 
 [2]
 The application notes to the Guideline have since been revised. Application note 3 now indicates that "[a]n upward departure may be warranted ... in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets or activities of a criminal organization." U.S.S.G. Sec. 3B1.1 appl. n. 3. Nevertheless, we rely upon our precedent that existed prior to the amendment and do not decide whether Chapman's conduct can be construed to have been an "exercise of management responsibility over the property assets or activities of a criminal organization." We so refrain because a determination that his conduct could be so construed would violate the ex post facto clause of the Constitution. See United States v. Newman, 6 F.3d 623, 629 n. 1 (9th Cir.1993) (application of guideline section amended to the defendant's detriment since the time of the offense violates ex post facto clause); United States v. Johns 5 F.3d 1267 (9th Cir.1993) (amendment to guidelines that removed sentencing judges discretion to depart downward, which had been recognized in circuit precedent, could not be retroactively applied to defendant without violating ex post facto clause). We acknowledge that the Commission labeled the amendment to Sec. 3B1.1 as a "clarifying" amendment and that we have stated that clarifying amendments do not raise ex post facto questions. See e.g., United States v. Webster, 996 F.2d 209, 211 n. 4 (9th Cir.1993). However, the amendment to Sec. 3B1.1, if indeed it affects the application of our precedent in this case, represents a substantive change to the guideline and cannot be considered a "clarifying" amendment in this circuit. See Johns 5 F.3d at 1270 (noting that a guideline amendment that eliminated the effects circuit precedent could not be characterized as a mere clarification)
 
 
 [3]
 Although the government's witness at Chapman's sentencing hearing testified that on at least one occasion Chapman received the drugs for a sale from Morris Buckles, one of the codefendants in this case, there was never a suggestion that Buckles was an independent source of drugs for Chapman. Buckles was simply another member of the single distribution network headed by O'Connor and Trottier. The government witness testified that Buckles occupied a position in the distribution scheme similar to that of Chapman
 
 
 [4]
 Indeed, the district court indicated as much when it stated at the conclusion of Chapman's first sentencing hearing: "O'Connor and Trottier were the organizers and the leaders, but I put Chapman right under them as a distributor for resale."
 
 
 [5]
 Section 2D1.4 of the Sentencing Guidelines provides that the quantity to be used in determining the offense level for conviction of conspiracy to distribute a controlled substance be determined by referencing the definition of "relevant conduct" in section 1B1.3
 
 
 [6]
 The November 1991 version of the Guidelines defined relevant conduct to include:
 all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.
 U.S.S.G. Sec. 1B1.3(a)(1) (November 1991) (emphasis added). Effective November 1, 1992, the above guideline was revised to read:
 (A) all acts and omissions committed aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
 (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.
 U.S.S.G. Sec. 1B1.3(a)(1) (November 1992) (emphasis added). The commentary to the superseding guideline explains:
 With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.
 U.S.S.G. Sec. 1B1.3 appl. n. 2 at 18 (November 1992). Application note 1 further clarifies the substitution:
 The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice or conspirator.
 Subsequent to this change, we have held that a district court's failure to engage in a foreseeability analysis to determine the amount attributable to each defendant convicted of a conspiracy for purposes of sentencing is reversible error. See United States v. Petty, 992 F.2d 887 (9th Cir.1993).