**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50568 |
| Plaintiff - Appellee, | D.C. No. 8:09-cr-00248-DOC-6 |
| v. | |
| KAREN MARKOSIAN, AKA Garen, AKA Kar, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50571 |
| Plaintiff - Appellee, | D.C. No. 8:09-cr-00248-DOC-3 |
| v. | |
| ANGUS BROWN, AKA Cide, AKA Cy, AKA Homicide, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50573 |
| Plaintiff - Appellee, | D.C. No. 8:09-cr-00248-DOC-2 |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

v.

ARMAN SHAROPETROSIAN, AKA
Dzi, AKA Horse, AKA Arman Petosian,

       Defendant - Appellant.

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

ARTUSH MARGARYAN, AKA Artush
Vaganovich Margaryan, AKA Arush V.
Margaryan, AKA Arush Vaganovic
Margaryan,

       Defendant - Appellant.

No. 12-50574

D.C. No. 8:09-cr-00248-DOC-10

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

HOVHANNES DILBOYAN, AKA
Andrankik Harutyunyan,

       Defendant - Appellant.

No. 13-50092

D.C. No. 8:09-cr-00248-DOC-11

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Before: W. FLETCHER, PAEZ, and BERZON, Circuit Judges.

In these consolidated appeals, five defendants (Brown, Sharopetrosian, Markosian, Margaryan, and Dilboyan) appeal various aspects of their convictions and sentences. We affirm.

Dilboyan argues that his guilty plea should be vacated because it was based on evidence seized during a pretextual traffic stop. However, by pleading guilty without the benefit of a plea agreement, Dilboyan waived this claim. *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005). Even if the claim weren't waived, it fails, as Dilboyan concedes that the officers had probable cause to stop the car for a traffic violation. *See United States v. Whren*, 517 U.S. 806 (1996).

Margaryan claims that the district court violated his right to a speedy trial under both the Speedy Trial Act and the Sixth Amendment. Margaryan waived his Speedy Trial Act claim, as he failed to move for dismissal on Speedy Trial Act grounds. *See United States v. Lam*, 251 F.3d 852, 854, 861 n.11 (9th Cir. 2001). His Sixth Amendment claim fails because he has not shown specific prejudice, which is required when, as here, the government acts with reasonable diligence. *See Doggett v. United States*, 505 U.S. 647, 654 (1992).

Nor did the district court err by failing to sever Margaryan's trial. The government introduced "substantially overlapping evidence" of all of the codefendants' involvement in a single bank fraud conspiracy scheme, which is a particularly appropriate reason for joinder under Federal Rule of Criminal Procedure 8(b). *United States v. Vasquez-Velasco*, 15 F.3d 833, 844 (9th Cir. 1994). Margaryan did not show that the district court's limiting instruction was insufficient to cure any prejudice he may have suffered. *See United States v. Johnson*, 297 F.3d 845, 855 (9th Cir. 2002).

The district court did not err in admitting evidence of Margaryan's uncharged conduct. Margaryan's depositing of the $79,000 forged check and placement of skimmers and micro-cameras on ATMs were acts that "comprised the conspiracy" and "occurred within the temporal scope of the conspiracy," and so are considered "inextricably intertwined." *United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004). Under Federal Rule of Evidence 404(b), these acts were admissible as probative of Margaryan's intent to participate in the conspiracy. *See United States v. Ayers*, 924 F.2d 1468, 1472–73 (9th Cir. 1991).

Brown, Sharopetrosian, Markosian, and Margaryan challenge the district court's calculation of intended loss. In a conspiracy case, the sentencing court takes into account "all reasonably foreseeable acts and omissions of others in

4

furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction" in determining its loss calculation, U.S.S.G. § 1B1.3(a)(1)(B), which need only be "reasonable" and is "entitled to appropriate deference," *id.* § 2B1.1 cmt. n.3(C). Unlike the court in *United States v. Ladum*, 141 F.3d 1328, 1345-47 (9th Cir. 1998), upon which the defendants rely, the district court made specific factual findings that these four defendants were aware of the overall scheme and that the full extent of the conspiracy's losses was reasonably foreseeable to them. The court's findings were supported by record evidence regarding the defendants' involvement in the conspiracy. Brown organized the conspiracy from prison, directing the activities of outside participants such as his girlfriend Faye Bell and his key deputy, Kelly Benson. Sharopetrosian was the other primary organizer, directing the activities of outside participants such as his wife, Kristine Ogandzhanyan, and his business partner, Markosian. Brown and Sharopetrosian, who were in prison together, spoke on contraband cell phones in addition to in-person conversations. Bell and Ogandzhanyan served as the primary link on the outside between Brown's associates and Sharopetrosian's associates. The Brown crew took primary responsibility for ordering and picking up legitimate checks that were fraudulently ordered on the victims' accounts. They would deliver the checks as well as

5

documents containing legitimate signatures to Bell, who would transfer them to the Sharopetrosian crew via Ogandzhanyan. The Sharopetrosian crew would then take over, forging the checks and depositing them into the money laundering accounts. Markosian managed the activities of other, lower-level conspiracy members, including Margaryan. Margaryan was caught in possession of forged checks, access materials for money laundering accounts, and stolen debit card numbers and identifying information. Further, as to Sharopetrosian, the district court made findings that he specifically intended to maximize the loss caused by his coconspirators. *See United States v. Blitz*, 151 F.3d 1002, 1009–10 (9th Cir. 1998); *cf. United States v. Manatau*, 647 F.3d 1048, 1050 (10th Cir. 2011).

Brown, Sharopetrosian, Markosian, and Margaryan all argue that the district court erred by using the late-2009 version of the sentencing guidelines manual rather than the earlier version, which defined "victim" only as someone who had sustained actual loss. The relevant guidelines change raises ex post facto issues because it (1) makes a substantive change rather than merely clarifying an existing rule and (2) makes the defendants' punishment more onerous that it would have been under the earlier guidelines. *United States v. Johns*, 5 F.3d 1267, 1269, 1272 (9th Cir. 1993). However, the distinction between the manuals is irrelevant because the court reasonably found that each of the defendants was involved in the

6

conspiracy after mid-2009. Nor did the court err in its number-of-victims calculations, as it reasonably found that the defendants all had knowledge of the full scope of the conspiracy's operations. *See United States v. Treadwell*, 593 F.3d 990, 1002 (9th Cir. 2010) (explaining that the court should "identify the loss that fell within the scope of the defendant's agreement with his co-conspirators and was reasonably foreseeable to the defendant").

Brown and Sharopetrosian both challenge the district court's imposition of the vulnerable victim enhancement. However, there was ample evidence in the record to show that Brown intentionally targeted elderly victims, and that the defendants knew or should have known that those victims were vulnerable to the scheme because they would be less likely to use online banking or notice changes made to their accounts. *See United States v. Mendoza*, 262 F.3d 957, 960–61 (9th Cir. 2001); *United States v. Luca*, 183 F.3d 1019, 1025 (9th Cir. 1999). Sharopetrosian conceded in his sentencing memorandum that the enhancement should apply. His claim is thus waived, as he placed "evidence in the record that [he] was aware of . . . [a] relinquished or abandoned right." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc).

Brown and Markosian challenge the district court's imposition of the leadership enhancement under U.S.S.G. § 3B1.1(c). However, there was evidence

7

in the record that would support the conclusion that they exercised the necessary level of control. *See id.* § 3B1.1, cmt. n.4. The government introduced evidence, via recorded telephone call, that Markosian sent Margaryan and Dilboyan to deposit a fraudulent check, and that Markosian agreed to recruit someone else to deposit checks after Margaryan and Dilboyan were arrested. In the same call, Sharopetrosian asked Markosian for reassurance that Margaryan and Dilboyan were "normal" participants, suggesting that Sharopetrosian was not familiar with the different runners Markosian used. This is sufficient evidence to support the district court's conclusion that Markosian had independent authority to direct the actions of Margaryan and Dilboyan, which is adequate foundation for the enhancement. *See United States v. Whitney*, 673 F.3d 965, 975 & n.6 (9th Cir. 2012).

The evidence was even stronger as to Brown. In his plea colloquy, the factual basis offered by the government, which Brown accepted, included the following evidence that demonstrated control over other coconspirators: while Brown was in prison, the conspiracy was a multi-level operation that used "runners" to cash checks and deliver the proceeds to other, higher-level members of the conspiracy; after contacting Chase Bank to determine the value of one victim's account, Brown directed co-conspirator Kelly Benson to look up the

8

victim's address so that they could order checks on the victim's account, and on another occasion, Brown gave Benson another victim's Social Security number and "directed him to obtain their date of birth" to access the account. Benson testified that Cox and Brown had recruited him and instructed him regarding management of outside co-conspirators, including the runners. These facts establish that the district court's conclusion that Brown held a leadership position in the conspiracy was not clearly erroneous. *See United States v. Rivera*, 527 F.3d 891, 908–09 (9th Cir. 2008).

Markosian and Margaryan challenge the district court's decision to apply the sophisticated means enhancement under U.S.S.G. § 2B1.1. The district court found that both defendants had full knowledge of conspiracy operations including the use of money laundering accounts used to conceal the identities of the conspirators; the use of prepaid phones registered in false names; the use of skimmers and micro-cameras to collect victims' bank account information from ATMs; and the use of strategies to bypass bank security protocols and manipulation of account information to avoid contact between the bank and the account holder. These activities are clear examples of "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *U.S.S.G.* § 2B1.1, cmt. n.8(B).

Markosian also argues that the court erred by refusing to grant him a sentence reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 because he submitted a letter to the court at sentencing in which he accepted responsibility for his crimes. However, the court acted within its discretion in denying the reduction, given that Markosian denied facts related to intent—an essential element of the fraud crime—and did not manifest any evidence of contrition until after he was convicted. *See United States v. Fleming*, 215 F.3d 930, 940 (9th Cir. 2000).

Margaryan argues that the court erred by failing to grant him a minor role reduction under U.S.S.G. § 3B1.2. The court characterized Margaryan as having a "substantial part" in the conspiracy, and rejected as "ridiculous" his claim that he had no knowledge of the content of the thumb drive containing victims' identifying information, thereby communicating its finding that Margaryan had a substantial role in the conspiracy that was incompatible with a minor role adjustment. *See United States v. Rigby*, 896 F.2d 392, 394 (9th Cir. 1990); *cf. United States v. Gunning*, 339 F.3d 948, 949 (9th Cir. 2003). The court did not clearly err in determining that Margaryan was not a minor participant in the conspiracy. *See United States v. Rodriguez-Castro*, 641 F.3d 1189, 1192-93 (9th Cir. 2011).

Finally, we conclude that Brown's sentence is substantively reasonable. A within-guidelines sentence will be reversed only if the court's decision was

10

"'illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'" *United States v. Treadwell*, 593 F.3d 990, 1011 (9th Cir. 2010) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)).  Brown received a below-guidelines sentence despite the court's findings that he was one of the leaders of a high-level, complex conspiracy that defrauded banks and account holders out of millions of dollars.

**AFFIRMED.**