24 F.3d 250
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sherry CROSSWHITE; Robert L. Williams, Defendants-Appellants.
 Nos. 93-30147, 93-30148.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 2, 1994.
Decided May 6, 1994.
 
 Before: WRIGHT, SCHROEDER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Crosswhite and Williams pleaded guilty to narcotics violations. They suffer from morbid obesity and moved to continue sentencing so their physician could present medical testimony. The district court denied the motion and refused to depart downward under U.S.S.G. Sec. 5H1.4 (extraordinary physical impairment). We affirm.
 
 
 3
 1. The district court did not err in denying a continuance.
 
 
 4
 We review for abuse of discretion the decision to deny a continuance. United States v. Flynt, 756 F.2d 1352, 1358 (9th Cir.), amended on other grounds, 764 F.2d 675 (1985). We will not reverse unless the decision was arbitrary or unreasonable. Id. "[I]n order to obtain a reversal, appellant must show at a minimum that he has suffered prejudice as a result of the denial of his request." Id. at 1359.
 
 
 5
 There are four factors in determining whether the court abused its discretion: 1) the appellant's diligence before seeking the continuance; 2) the usefulness of the continuance; 3) the inconvenience that granting the continuance would have caused the government; and 4) the prejudice suffered by the appellant. Id.
 
 
 6
 a. Diligence
 
 
 7
 Defendants had more than five months after their guilty plea to arrange for medical testimony. They seem to argue that during this time they focused their attentions on a Rule 35(b) motion and assisting the DEA in its investigation. They did not recognize that their medical condition would be "the foremost consideration at sentencing" until they "sensed that [they] were not being utilized by DEA."
 
 
 8
 The defendants did not exercise diligence by focusing all their attention on the DEA investigation to the neglect of other issues. Their obesity was no surprise. They had a week after the court denied their motion to arrange for medical testimony. Nothing in the record suggests that they were unable to do so.
 
 
 9
 The defendants also confuse the issue by focusing on the Rule 35(b) motion. They argue that they were diligent because "the request for the continuance was made as soon as it became apparent that the cooperation with the DEA would not bear fruit." The issue, however, is not the Rule 35(b) motion. More important, the issue of whether they provided substantial assistance is moot. The court granted the government's Rule 35(b) motion. The defendants could not have suffered any prejudice.
 
 
 10
 b. Usefulness
 
 
 11
 Defendants argue that the court recognized the need for medical testimony when it recommended that they be sent to the Rochester facility and suggested that it would review the medical reports from that facility at the time of the Rule 35(b) motion. They miss the point.
 
 
 12
 The court never recognized the need for "testimony." It said it would review "medical reports and results" of the prison examinations. There was no need for medical testimony. Both defendants submitted written physicians' reports describing their medical conditions. With this information, the court could determine that they did not qualify for a downward adjustment under U.S.S.G. Sec. 5H1.4. A review of additional medical information at the time of the Rule 35(b) motion might have helped the court make further recommendations about the place of incarceration, but it was not necessary in determining whether a downward departure was appropriate.
 
 
 13
 c. Inconvenience
 
 
 14
 There is no showing that a continuance would have inconvenienced the government. But the court had already granted one and sentencing was postponed until more than five months after the defendants pleaded guilty.
 
 
 15
 d. Prejudice
 
 
 16
 Defendants cannot show prejudice. As suggested above, there was no need for the medical testimony. The defendants wanted their treating physician to testify. Before sentencing, however, the court reviewed the physician's letters describing their medical conditions.[1] The defendants acknowledge that "the medical testimony which was sought to be presented [was] summarized" in those letters.
 
 
 17
 Defendants show no real prejudice from the decision to deny their continuance and from their subsequent incarceration. At sentencing, they alleged only that the prison system could not manage their medical care and they would receive only emergency medical treatment. They offered no evidence in support. Their brief offers no support for their argument that they are physically impaired under U.S.S.G. Sec. 5H1.4 and should not be incarcerated.[2]
 
 
 18
 2. The district court did not err in refusing to depart
 
 
 19
 downward under U.S.S.G. Sec. 5H1.4.
 
 
 20
 We will not review a discretionary refusal to depart downward. United States v. Fulton, 987 F.2d 631, 634 (9th Cir.1993). But we review de novo the court's determination that it lacked discretion to depart if the court indicated it would otherwise have departed. Id. We also review for clear error "a district court's factual findings ... and will not reverse unless we are left with the definite and firm conviction that a mistake has been committed." United States v. Martinez-Guerrero, 987 F.2d 618, 620 (9th Cir.1993) (citations and quotation marks omitted).
 
 
 21
 The policy statement for U.S.S.G. Sec. 5H1.4 reads, in part:
 
 
 22
 Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.
 
 
 23
 U.S.S.G. Sec. 5H1.4 (emphasis added).
 
 
 24
 "A departure under section 5H1.4 involves a two-step process." Martinez-Guerrero, 987 F.2d at 620. The district court must first make a factual finding to determine whether the defendant's physical condition is an extraordinary physical impairment. If so, the court must then determine whether the condition warrants a downward departure or an alternative to confinement. Id.
 
 
 25
 The record is unclear whether the court believed it lacked discretion to depart, i.e., whether it found that the defendants' conditions were extraordinary physical impairments. The judge said:
 
 
 26
 And I see [the defendants' weight] as a problem. I am alert to the situation and I'm going to take it into account in the sentence that is imposed here today. On the other hand, I think that both defendants have to realize that the guidelines in certain instances require incarceration where no acceptable mode of departure is present. And prison is not only for those who are without a weight problem or without physical impairments and disabilities.
 
 
 27
 Assuming that the court thought that it lacked the discretion to depart because the medical conditions were not extraordinary physical impairments, that finding was not clearly erroneous.
 
 
 28
 In Martinez-Guerrero, the defendant was legally blind. The district court, relying on the Bureau of Prisons' ability to care for the defendant, found that the defendant did not have an extraordinary physical impairment. We held this was not clearly erroneous. Id. at 621. We reasoned that a district court "may consider any number of circumstances in making its finding on the question of extraordinary physical impairment," including the ability of the Bureau of Prisons to accommodate the defendant. Id. at 620.
 
 
 29
 Here, there was no express finding that the Bureau of Prisons could provide adequate care to the defendants.[3] But, the court said:
 
 
 30
 Now, in dealing with the United States Government, we're not dealing with a primitive foreign country. The United States' prison system has some of the finest medical personnel and facilities in the world.
 
 
 31
 More important, the defendants fail to show that the Bureau of Prisons could not provide adequate medical care.[4] See United States v. Anders, 956 F.2d 907, 911 (9th Cir.1992), cert. denied, 113 S.Ct. 1592 (1993) (defendant bears the burden where he or she seeks a downward departure). Although they have a number of medical conditions related to their morbid obesity, the medical evidence does not show that they are physically impaired to the extent that incarceration is inappropriate.
 
 
 32
 Most of Crosswhite's problems are aggravated by her weight, but controlled through diet, exercise and medication. Williams' obesity also complicates his other problems, but they too are controlled through diet, medication, bed rest, splints and physical therapy. While these conditions may be significant, they are amenable to treatment. The court did not clearly err in finding that the prison system could accommodate these inmates and provide adequate medical care.
 
 
 33
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The physician expressly addressed the letters to the district court with the intent that the court use the information in determining the defendants' sentences
 
 
 [2]
 Ironically, they say that "during his stay at FMC Rochester, Defendant Williams has lost weight and seems to be responding to treatment. The question raised by this appeal is whether the medical condition of Defendant Williams will present further problems upon his release from FMC Rochester and assignment to another federal facility."
 
 
 [3]
 In its memorandum opposing the motion to continue, the government simply asserted that "the Federal prison system has adequate medical facilities to handle whatever physical problems these defendants may bring with them to federal custody."
 
 
 [4]
 They merely allege that the prison system would not be able to manage their medical care and they would receive only emergency medical treatment